THOMAS v. LEWMAN, Ex'x.

No. 29997.   Dec. 23, 1941.

*120 P. 2d 341.*

Bower Broaddus and Julian B. Fite, both of Muskogee, and William I. Potter, of Kansas City, Mo., for plaintiff in error.

Charles F. Gordon, of Muskogee, and Wm. F. Knowles, William S. Warden, and Sprinkle & Knowles, all of Kansas City, Mo., for defendant in error.

RILEY, J.   This is an appeal from an adverse verdict and judgment in an action commenced by Glenn A. Thomas, hereinafter referred to as plaintiff, against Idolene E. Lewman, executrix of the estate of L. D. Lewman, deceased, to establish a claim of plaintiff against the estate of L. D. Lewman for an attorney's fee for services alleged to have been rendered L. D. Lewman in his lifetime.

The transactions out of which the claim for attorney's fee arose are lengthy and involved. Plaintiff is an attorney at law practicing in Kansas City,

Mo. L. D. Lewman was a resident of Muskogee, Okla., but died in Kansas City, Mo., about November, 1937. He had been engaged in business there for several years. Defendant, Idolene E. Lewman, is his widow and was appointed executrix of the estate of deceased in Oklahoma. She resides in Atlanta, Ga.

Plaintiff filed his claim against the estate in the sum of $5,000 for services alleged to have been rendered deceased in his lifetime. The claim was disallowed, and plaintiff commenced this action. Prior to July, 1929, Lewman acquired a 99-year lease on two lots at the corner of Eleventh street and Baltimore avenue in the business district of Kansas City. A corporation known as the Eleventh & Baltimore Corporation was organized and the property was transferred to it. In order to obtain additional funds with which to erect upon the lots an office building, a loan of $550,000 was negotiated through Prescott-Wright-Snider, investment bankers of Kansas City. The loan agreement stipulated that the corporation would issue to the bankers its first mortgage leasehold convertible bonds to mature in 12 years secured by a mortgage. On February 12, 1930, the bonds dated December 1, 1929, were delivered and the bankers paid the face amount thereof less $61,160 retained as commission. The money obtained by the loan was paid out in the construction of the building. Prior to the loan deceased had invested in the property $420,000. The funds obtained through the loan being insufficient to complete the building, the Eleventh & Baltimore Corporation borrowed from the Manhattan Construction Company $119,000 evidenced by 33 promissory notes of $3,500 each, and one note in the sum of $4,217.74. These notes were unsecured.

L. D. Lewman became the owner of all the outstanding stock of the corporation and also acquired the $119,000 in notes from the Manhattan Construction Company. In addition thereto the corporation owed Lewman some $6,249 which was also unsecured. The cor-

poration ran into financial difficulties, and in May, 1933, Mr. Lewman filed an action in the circuit court of Jackson county, Mo., to have a receiver appointed. Clark Smith was appointed receiver. He had an office in the building owned by the corporation. During the pendency of the receivership, the Telephone Utility & Investment Company, of which Mr. E. E. Amick was president, also had office space in the building. Mr. Amick appears to have been engaged, to some extent, in the business of acquiring control of corporations in financial difficulty and refinancing or reorganizing them under the provisions of section 77-B of the Federal Bankruptcy Act. The Telephone Utility Company had, about that time, through its attorney, Glenn A. Thomas, carried through and completed reorganization of a utility company known as the Kansas Home Telephone Company. Mr. Smith apparently heard some discussion concerning the reorganization of the Telephone Company, and through some conversation with Mr. Amick the question of reorganization of the Eleventh & Baltimore Company was suggested. This led to a conference between Mr. Lewman, Mr. Amick, and Mr. Smith. There the question of whether it was possible or feasible to work out a reorganization of the Eleventh & Baltimore Corporation was discussed. A second meeting was held, at which Mr. Thomas was called in. Just who called him or suggested that he be called does not appear. At this meeting terms and plans were discussed and a tentative agreement appears to have been made between Mr. Lewman and Mr. Amick. It was agreed that Mr. Thomas would draw the contract.

Mr. Thomas prepared the contract which is referred to as an "option agreement." On November 15, 1934, this agreement was executed by Mr. Lewman and Mr. Amick. It is out of this agreement and a subsequent extension thereof and subsequent transactions, in an effort to carry out the reorganization of the corporation, that this controversy arose. By the option agreement, it was stipulated that Mr. Lewman was the owner of all the stock of all classes

issued by the corporation and outstanding, and was the owner and holder of the unsecured notes above mentioned and certain other open accounts, and that Mr. Lewman desired to sell all the same to Mr. Amick and Mr. Amick desired to acquire them; it provided that the agreement, with the several other papers and documents dealt with, should be placed in escrow with Clark Smith. Lewman was to assign in blank the certificate representing all the outstanding stock of said corporation, except three shares of the common stock not deposited with the escrow holder which were to be and were assigned absolutely to Amick or his nominee. The purpose was to qualify three persons of Amick's choice to serve as directors of the corporation. The option agreement made Amick attorney in fact, with full power of substitution, to vote all the outstanding stock of the corporation, at any meeting where the stock was entitled to vote, during the life of the escrow agreement, which was irrevocable for its duration.

The agreement provides that Lewman "hereby agrees to sell, and hereby grants to second party (Amick) the option to purchase all" of said common and preferred stock, the 34 promissory notes and all other claims of Lewman against the Eleventh & Baltimore Corporation. Consideration therefor was to be $30,000 in Telephone Utility first mortgage bonds of the Kansas Telephone Company then in process of reorganization, or of any new corporation which might subsequently own or operate said Telephone Company. It further provided for substitution of other securities in payment, in case of failure to complete reorganization, and issuance of bonds of the Kansas Telephone Company. It was then provided that in case Eleventh & Baltimore Corporation should, during the life of the agreement, become involved in any foreclosure or other reorganization proceedings,

". . . second party (Amick) . . . is hereby expressly authorized, in any such proceedings, to deal with and treat all of said stocks and all of said promissory notes and accounts as though

second party was the absolute owner thereof, and to consent, or object, in his absolute discretion to any reorganization plan or plans which may be proposed in respect to Eleventh & Baltimore Corporation, and to accept or cause to be accepted, in his absolute discretion, in lieu of all or any part of said stocks and promissory notes and accounts, any other new stocks or new securities of said corporation as reorganized, or of any new corporation which may be formed to take over the assets of said Eleventh & Baltimore Corporation."

The agreement was to run until June 1, 1935. Upon the execution of said agreement, Lewman executed the assignments of stock, notes, etc., called for therein and delivered same with the agreement to Clark Smith in escrow. He also assigned the three shares of stock to Amick. Shortly thereafter it was decided to commence proceedings for the reorganization of Eleventh & Baltimore Corporation under section 77-B of the Federal Bankruptcy Act. In order so to do, it was considered necessary that an attorney be employed to represent the corporation. Thereupon Millard F. Cheek, an associate of Amick and Clark Smith, employed John W. Moore, an attorney in Kansas City, to represent Eleventh & Baltimore Corporation in the proceedings for reorganization of said corporation thereafter commenced in the federal court. The agreement between Amick, Cheek, and Clark Smith contemplated that Amick and Cheek would acquire all the common stock interest and liabilities of the Eleventh & Baltimore Corporation for reorganization purposes, and that Clark Smith, manager of the building (he was also receiver), would be continued as manager at a salary of $500 per month and would receive 50 per cent of the stock of the reorganized corporation.

It does not appear when said agreement was executed, but it was apparently about the date of the original agreement between Lewman and Amick. This original agreement was destroyed, but there was a gentlemen's agreement to take care of Smith upon completion of the proposed reorganization. After petition for reorganization of

the Eleventh & Baltimore Corporation was filed, plaintiff herein, at the instance of Amick, prepared and presented claims for the holder of the stock of the corporation, the 34 promissory notes and other unsecured claims all included in and covered by the option agreement. These claims were filed in the name of L. D. Lewman and were verified by E. E. Amick as agent for Lewman.

In the reorganization proceedings, Mr. Thomas, representing the above claims, assailed the validity of the mortgage securing the bonds of the Eleventh & Baltimore Corporation on the ground that the corporation held and owned only a leasehold on the lots upon which the building had been erected, and that the mortgage or deed of trust securing the bonds, under the laws of the State of Missouri, amounted only to a chattel mortgage; that usury had been charged by the investment bankers in making the original loan, and that under the Missouri law a chattel mortgage is void when based on usurious charges. The bondholders' committee assailed the claims theretofore filed by Amick and verified by him as agent of Lewman, on the grounds that under the federal act and procedure, claims of that kind could be verified only by the owner and not by an agent. The court sustained the bondholder, but permitted amended claims to be verified by Lewman.

Mr. Thomas prepared amended claims and Mr. Lewman verified same. The issues raised were referred to a referee and extended hearings were had. The proceedings were long drawn out and the questions were not decided before June 1, 1935. On May 31, 1935, Lewman, in writing, extended the option agreement to December 1, 1935. On October 30, 1935, Lewman and Amick entered into a new agreement, granting Amick the option and right to purchase all of the stock and all of said claims against the corporation, such option to continue until the final termination of the reorganization proceedings. The price fixed in this agreement was $30,000 to be paid in 5 per cent bonds of Eleventh & Baltimore Corporation, if reorganized,

or of the Eastern Kansas Telephone Company, or of other sound 5 per cent first mortgage bonds.

For granting the option Amick agreed to pay Lewman 5 per cent upon the $30,000 for the period of three years unless said suit should terminate earlier. There was to be paid $750 on execution of the agreement, $750 on December 1, 1935, and $750 each six months thereafter until $4,500 was paid. Provided, however, that should Amick exercise his option prior to the maturity of all such payments, then payments should be computed and made only up to the date of the exercise of such option. No decision in the matter of reorganization was had in the United States District Court until July 4, 1936, at which time Judge Reeves of the United States District Court confirmed the report of the special master, which recommended the allowance of the claim of the trustee for the bondholder to the extent of $515,399.94, plus interest, and sustained the first mortgage lien on the assets of the corporation, and allowed the Lewman claims to the extent of $125,967.18 as unsecured claims.

Exceptions were allowed the debtor and L. D. Lewman's appeal was petitioned for by Geo. W. Humphrey, attorney then representing the corporation, and by Glenn A. Thomas, attorney as representing claimants. However, Amick requested Lewman to make the bond for appeal, but he refused to do so.

The bondholders' committee filed a motion requesting the court to make an order directing Smith, who had been appointed trustee of the debtor corporation, under the reorganization proceedings, to turn over the assets and property of the corporation to its trustee, but no action was taken on said motion.

Thereafter, about September 17, 1936, the bondholders' committee filed a motion to dismiss the Lewman appeal and attached thereto an affidavit of Lewman dated July 15, 1936, wherein it was stated that said appeal to the Circuit Court of Appeals was taken

without his knowledge or consent and after he had refused to join in said appeal. Mr. Thomas, at the instance of Mr. Amick, appeared and resisted the motion to dismiss, apparently taking the position that Mr. Amick had an interest in the subject matter by virtue of his option to purchase Lewman's stock, claims, etc., sufficient to justify the prosecution of the appeal. The appeal was dismissed.

Thereafter, an amended reorganization plan was submitted to the court and approved whereby Lewman was to receive 12,000 shares of common stock of the reorganized corporation.

Lewman was also given a manager's contract to manage the building for five years. Seven days after said contract was executed Lewman died and thereafter this action was commenced.

It is the contention of plaintiff that the escrow or option agreement appointed and designated Amick as Lewman's agent to do any and all things deemed necessary and proper to prosecute Lewman's claims against the corporation; that his employment by Amick was as agent for Lewman, and whatever services he rendered were services to Lewman under such employment, and therefore the estate of Lewman is liable for his compensation. The contention of defendant is that plaintiff was not representing Lewman in any sense, but in fact represented Amick.

The cause was submitted to the jury, resulting in a verdict and judgment for defendant, and plaintiff appeals.

It is contended that the court erred in refusing to instruct the jury, as requested by plaintiff in error, that the verdict must be for plaintiff, and that the sole matter for determination of the jury was the value of the services rendered by plaintiff.

Plaintiff cites authorities in support of this contention to the effect that where services are rendered by an attorney at the request of another, or where the benefits of such services are knowingly accepted, a promise to pay therefor will be implied, unless the circumstances show that the services were intended to be gratuitous, and that where there is even slight proof of employment of the attorney by client, the fact that the latter stood by without objection and allowed the attorney to render valuable services in his behalf will estop him to deny the fact of employment. With these rules we find no fault. But an attorney's claim for compensation for professional services against a person sui juris, or against the property of such person, must rest upon a contract of employment, express or implied, made with the person sought to be charged or his agent. Nor can one legally claim compensation for services on account of incidental benefits and advantages to one, flowing to him on account of services rendered to another by whom the attorney may have been employed. And where an attorney in carrying on the action does so for his own benefit and not for the nominal party to the action, the fact that such nominal party knows of his course and does not object will not make him liable for fees. 6 Corpus Juris 730-731.

The same rule should apply where one party employs an attorney to carry on an action in the name of a mere nominal party, for the benefit of the person employing such attorney. The fact that the party whose name was being used for the benefit of the person employing the attorney knows about his cause, and knows that the action is being carried on and does not object, does not render him liable for fees. The contract here considered, between Amick and Thomas, for employment of the latter, is insufficient upon which to bind the Lewman estate for the payment of Thomas.

In this case the real and decisive question is whether plaintiff was employed by and represented deceased, L. D. Lewman, or E. E. Amick. There is no direct evidence of an express contract of employment by Lewman, either by Lewman himself or by E. E. Amick purporting to act as agent for Lewman.

It is not contended that there was such a contract. Plaintiff does contend: The fact that deceased employed plaintiff as his attorney to represent him in said matter is implied from their conduct and relation to each other in the subject matter of said litigation. Plaintiff is relying upon an implied contract. Whether there is an implied contract is to be gathered from the acts of the parties in connection with the surrounding circumstances, and what was said between the parties at the time, the nature of the work done, and how the interest of the party sought to be charged is affected thereby. The facts, circumstances, etc., in evidence are such that it might readily be inferred that plaintiff was representing Lewman and that plaintiff expected Lewman to pay him for his services and that Lewman expected to do so.

But there is also evidence and circumstances which strongly indicate and from which it might as readily be inferred that plaintiff was in fact employed by Amick and was working to advance Amick's interests and not that of Lewman. Clark Smith brought Amick and Lewman together; Amick was at that time interested in reorganization proceedings in the U. S. Court of at least two corporations. Plaintiff was representing Amick or his corporations in said proceedings. After Amick and Lewman first conferred concerning the possible reorganization of the Eleventh & Baltimore corporation, Amick, who, as stated, had experience in such matters, apparently decided that the reorganization might be effected at some profit or advantage to the interests owned by Lewman. They apparently agreed upon the general plan which was later adopted. Thereunder Lewman was to give Amick an option to purchase Lewman's stock in and claims against the corporation. For such purchase, if the option should be exercised, Lewman was to get $30,000 in bonds of one of Amick's reorganized corporations. It was deemed necessary to employ an attorney to draft the contract. Amick knew plaintiff and Lewman did not. It would naturally follow that Amick would suggest plaintiff as a suitable attorney; at any rate plaintiff was called in to draft the so-called option contract. It was drawn in such a way that Lewman bound himself to sell, but to buy was entirely optional with Amick. The contract was so drawn as to give Amick complete control and power to direct what should or should not be done in the reorganization proceeding. It placed complete control of the corporation in the hands of Amick, in that it required transfer of qualifying shares and voting power of all the other shares of stock to Amick, in order to enable him to elect directors of his choice. It provided that in case the corporation became involved in foreclosure or reorganization proceedings Amick was expressly authorized in such proceedings to deal and treat all the stock, notes, etc., as though he was the absolute owner.

Thus complete control of the corporation itself was placed in the hands of Amick. He could not force foreclosure proceedings, but he was placed in a position whereby he could authorize reorganization proceedings. He was also placed in complete control of the claims against the corporation represented by the stock, notes, etc., and what should be done therewith in respect to any foreclosure or reorganization proceedings. When this agreement had been executed and all the stock, notes, and claims duly assigned in blank by Lewman, reorganization proceedings were at once decided to be desirable. Thereupon Mr. Cheek, an associate of Mr. Amick, and who was to share in any profits that might accrue to Mr. Amick in case of successful reorganization and exercise of Amick's option, employed Mr. Moore as attorney for the corporation to commence and prosecute reorganization proceedings. It was agreed that Mr. Thomas, plaintiff herein, should prosecute the claims represented by the stock, notes, etc.; that he did so with full knowledge and consent of Mr. Lewman is clear.

Mr. Thomas presented the claims and prepared the proof thereof. He did so in the name of Lewman, but through and

by Mr. Amick as Lewman's agent. He went before the court, and the record discloses that his principal efforts were to scale down the indebtedness of the corporation represented by its outstanding bonds and to have declared invalid the mortgage given by the corporation to secure the bonded indebtedness, and thus render the bonds unsecured indebtedness of the corporation and on a parity with the unsecured indebtedness of Lewman. Had he succeeded, that would have been to the great advantage of Lewman in case only that Amick should then decline to exercise his option to buy from Lewman the stock, notes, etc. But it would also have worked a great advantage to Amick in event he should exercise such option.

Amick was in a position to take advantage of any of the work of Mr. Thomas, in event of success, or in event of failure to decline the option and get out without loss, except as to payment of costs which he obligated himself to pay.

Under all the facts and circumstances it cannot be said as a matter of law that plaintiff was representing the interest of Lewman. Neither can it be said that he was not acting beneficially for and in the interest of Lewman.

The question was clearly one of fact for the jury. Therefore, there was no error in denying the motion to direct a verdict for plaintiff.

It is contended that the court erred in giving instruction No. 4 to the effect that if the jury should find that plaintiff claimed compensation solely because he asserted claims in the reorganization proceedings, and should further find that Lewman's name was used in asserting said claims merely by virtue of the contract between Lewman and Amick, and his name was used in said claims only as a legal necessity, then the mere use of the name of Lewman in said claims under such circumstances was not sufficient evidence by which the jury could infer that plaintiff rendered services on behalf of Lewman.

It is asserted that the instruction was erroneous because (a) it directed the jury to determine questions of law in that it directed the jury to find whether or not the Lewman claims were asserted in the name of Lewman as a "legal necessity" and whether or not his name was used by virtue of the contract between Lewman and Amick, and (b) because it is argumentative, confusing, and misleading. We fail to see wherein the court directed the jury to determine a question of law in submitting the question of fact. That was one of the controverted facts. It is one of the contentions of defendant that Lewman's name was used in presenting said claims only by virtue of the contract between Amick and Lewman and because the law required that claims be presented in the name of the owner, and that Amick, represented by Thomas, was merely using the name of Lewman in order to prove the claims for the benefit of Amick, and that Amick was under the necessity of using Lewman's name because he could not prove the claim in his own name because he did not yet own the claims and had only an option to purchase them.

The instruction fairly presented this question and was not objectionable merely because it used the words "legal necessity." It was not argumentative, misleading, or confusing. No case is cited wherein an instruction such as this was held to be so.

It is contended that the court erred in giving its instruction No. 5, wherein the jury was told that a verdict for plaintiff could not be found unless the jury should find and believe from the evidence that the legal services, for which plaintiff claims, were performed by him under authority and with the direction of deceased, and that if the jury should find and believe from the evidence that there was no contract for legal services and that any legal services rendered by plaintiff were not performed at the direction of Lewman, then the verdict should be for defendant.

It is contended that this instruction was erroneous because it told the jury

44

that before finding for plaintiff they must first find that the services were performed "under authority and with the direction of deceased," in that it excluded any question of liability under the authority and direction of Amick as Lewman's agent.

The instruction followed the language used in plaintiff's petition wherein he alleged: "That plaintiff rendered professional legal services for decedent in his lifetime, at the direction and upon the authority of decedent."

Defendant asserts that the words "under authority and with the direction of deceased," as used in the instruction, were broad enough to include authority and direction of Lewman acting through any agent.

Plaintiff in his reply brief concedes that this is true as a legal proposition, but contends that the instruction did not so instruct the jury, and that because the instruction stated that it must have been "at the direction of L. D. Lewman" it failed to correctly state the law and was of course misleading.

It is apparent that the instruction under the record, and under the contention of plaintiff, is good so far as it goes, and that the only defect therein contended for by plaintiff is that it did not go further and say, "under the authority and with the direction of deceased or his duly constituted agent." The record shows the objection and exception were general but did not call the attention of the court to the reason of plaintiff's objection. It is well settled that where an instruction given fails to completely state the law on a given proposition, it is the duty of the party objecting to call the attention of the court to the defect and offer complete instruction. This the plaintiff failed to do and is in no position to complain of the error, if any, in said instruction.

Error is asserted in giving instruction No. 7, which told the jury that if it found from the evidence that plaintiff rendered the services, if any, solely for the benefit of E. E. Amick, and said L. D. Lewman did not expect to pay plaintiff and plaintiff did not expect compensation from Lewman, the verdict should be for defendant.

The complaint is that there was no evidence at the trial that plaintiff's services were rendered solely, or even partially, for the benefit of E. E. Amick.

We have held that under all the evidence, facts, and circumstances there was a question of fact for the jury whether plaintiff was acting for Amick or Lewman. There was sufficient evidence, together with attendant circumstances, upon which to base the instruction.

It is contended that the court erred in instructing the jury that the verdict should be for defendant if the jury should find that Lewman did not expect to pay plaintiff. Had that been all the instruction, there might be merit in the contention. The instruction goes further in this regard and tells the jury that in connection with the fact that Lewman did not expect to pay, if the jury should so find, and further find that plaintiff did not expect compensation from Lewman, the verdict should be for defendant.

Plaintiff was relying upon an implied contract.

The instruction was not erroneous under the issues and evidence.

Instructions Nos. 7 and 8 correctly stated the law applicable to a claim based upon an implied contract. 6 C. J. 748; 71 C. J. 41; Taylor v. Currie's Estate (Mo. App.), 83 S. W. 2d 194; McDonald v. Redemeyer, 197 Mo. App. 630, 198 S. W. 483; Strother v. Dewitt, 98 Mo. App. 293, 71 S. W. 1129.

It is also contended that the court erred in permitting the secretary and bookkeeper to testify that Eleventh & Baltimore Corporation never operated at a profit. The objection was that this was not the best evidence. Defendant contends that there was no error therein. But if there was error therein, that does not call for a reversal.

Under the provisions of section 3206, O. S. 1931, 22 Okla. Stat. Ann. § 1068, no judgment is to be set aside or new trial granted by any appellate court on the ground of improper admission of evidence, unless in the opinion of the court to which application is made, after examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

From the whole record it does not appear that the admission of this evidence probably resulted in a miscarriage of justice, nor did it constitute a substantial violation of plaintiff's constitutional or statutory right.

The evidence complained of could have little effect. The error, if any, was harmless. This statutory provision has been applied in many cases. See Marland Refining Co. v. McClung, 102 Okla. 56, 226 P. 312. Therein we held:

"This court will not reverse a case for improper admission of testimony, unless from an examination of the entire record it appears the errors complained of have probably resulted in a miscarriage of justice or a violation of a constitutional or statutory right."

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and BAYLESS, HURST, and ARNOLD, JJ., concur. OSBORN, GIBSON, and DAVISON, JJ., absent.