Jack CARTER, Appellant,

v.

Roy D. WOOLEY, Appellee.

No. 46027.

Supreme Court of Oklahoma.

April 16, 1974.

**794**

Berry & Berry by Howard K. Berry, Jr., Oklahoma City, for appellant.

Ben A. Goff of Rhodes, Hieronymus, Holloway & Wilson, Oklahoma City, for Royal Indemn. Co.

BARNES, Justice:

The question here is whether the trial court erred in denying Appellant's motion relating to the payment, by his employer's workmen's compensation insurance carrier, Royal-Globe Insurance Company, or Royal Indemnity Company, of an attorney's fee to his attorney. Appellant and his attorney, or law firm, will hereinafter be referred to as "plaintiff" and "B", respectively, while the insurance company and its attorney, or law firm, will be referred to as "Royal" and "G", respectively.

In this appeal, the Court of Appeals reversed the trial court's order of denial of said attorney's fee, with instructions to grant plaintiff's motion and "such other relief as will effectuate this opinion." Principally, because that opinion authorizes relief which plaintiff did not seek, and to which he was not entitled, we have granted Royal's petition for certiorari.

The present controversy emerged from the situation hereinafter described. Plaintiff, while in the course of his employment as an insurance adjuster for a company we will refer to as "Motors", suffered injuries when the company's auto, he was driving, collided at an Oklahoma City street intersection with an auto driven by the Appellee, Wooley, and also occupied by Wooley's wife, Rhoda, in October, 1970.

Thereafter, plaintiff, represented by B, instituted two tort actions to recover damages for his injuries in the collision. One action was against Rhoda Wooley. The other one was this one, instituted in April, 1971, against Mr. Wooley, hereinafter referred to as "defendant". On plaintiff's petition in this action, B endorsed: "Attorney's Lien Claimed."

During the pendency of the present action, plaintiff also filed a claim in the State Industrial Court against his employer, Motors, and its aforementioned insurance carrier, Royal. When his and defendant's depositions were thereafter taken in December, 1971, plaintiff was receiving workmen's compensation benefits from Royal and continued thereafter to do so until Royal had paid such benefits in the total sum of $5,755.66.

Although the record before us does not reveal it, Royal's brief represents, without contradiction, that the trial court was apprised that on February 25, 1972, G wrote B the following letter:

"This will confirm our telephone conversation of February 23, 1972, in which I advise that the Royal Indemnity Company, insurance carrier for Motors Insurance Corporation, had retained our firm to protect their subrogation interest. They also agreed that it would be best if the insurance carrier did not intervene in this action.

"It is my understanding that you agree to protect my client's claim in the event of suit or trial and verdict. Since we do

have an interest in the outcome of the litigation, it probably would be advisable to enter my name as one of the attorneys of record for the plaintiff in the case. "Our subrogation interest at this time is as follows: Total medical payments, $2,944.16 and total temporary compensation to date of $2,352.00. If we can be of any assistance to you in the successful outcome of this case, we would be happy to do so. Thank you."

It is further represented, without contradiction, that thereafter plaintiff, with the consent and approval of Royal and its attorney, G, entered into an agreement with defendant and his wife, Rhoda, to dismiss this case and the one pending against Rhoda in consideration of the payment to them of the sum of $17,000.00. According to the agreed facts, defendant's insurance carrier, Allstate, thereafter issued its check in that amount payable to plaintiff, B, and Royal. The check was delivered to B in payment of the settlement money; and a "DISMISSAL WITH PREJUDICE" dated April 9, 1972, was drafted and signed by both plaintiff and B for filing in this case.

Before the check was endorsed or cashed, and after the present controversy arose over whether $5,755.66 of the check's proceeds was to be paid Royal in discharge of its subrogation right, without deduction of an attorney's fee for his attorney, B, plaintiff filed in the case the following pleading:

"MOTION TO DETERMINE AT-
TORNEY FEE AND FORE-
CLOSE ATTORNEY LIEN

"Comes now the plaintiff and moves the Court to fix a reasonable attorney fee for his attorneys of record and foreclose an attorney lien for the reason that the case has been settled for $17,000.00 and approximately $5,500.00 of that amount is to be paid to the plaintiff's Workmen's Compensation Insurance carrier who has a subrogation interest, pursuant to statute, and which has been collected through the efforts and diligence of the plaintiff's attorney, for which they should be compensated.

"Plaintiff's counsel asserted an attorney lien on the petition and presently possess the $17,000 secured by their efforts and therefore have a possession and retaining attorney lien."

After the matter was submitted to the trial court on briefs, without introduction of evidence, the court denied the motion in an order containing the following:

"* * * the Court finds that there existed no contractual relationship . . . between plaintiff's counsel and Royal-Globe Insurance, nor does the Court find that plaintiff's counsel performed any extraordinary service on Royal-Globe's behalf. To the contrary, the Court finds that Royal-Globe simply benefitted from the services that plaintiff's counsel necessarily performed in securing recovery for plaintiff.

*  *  *  *  *  *"

Thereafter, plaintiff's motion for a new trial was overruled and he lodged the present appeal.

Whether a plaintiff's attorney may be entitled to a fee from a workmen's compensation insurance carrier for his services referable to the satisfaction of the carrier's subrogation right arising out of its payment to his client of compensation benefits in a situation like this is a question of first impression in this jurisdiction.

Plaintiff contends, inter alia, that in this case, with its approved settlement in a manner beneficial to Royal [as well as to him], his attorney, B, actually represented Royal, as well as him, even though, in accord with its agreement with B [referred to in the hereinbefore quoted letter], Royal never became a formal or nominal party to the action. He says that, under the circumstances of this case, there was an attorney-client relationship between his attorney, B, and Royal, by implied contract, even though there is no claim that there was ever any express contract between them.

Royal differs with plaintiff in its interpretation of the aforementioned letter, arguing that its contents constitute no more than an "inquiry or clarification", instead of a promise, and cannot be used as the basis for any implied contractual relationship of client and attorney between it and B. For its not being required to share the legal expenses of obtaining the settlement, Royal quotes from Larson, The Law of Workmen's Compensation, Vol. 2, Fees, Expenses and Interest, § 74.32, p. 210, and from Commercial Union Insurance v. Scott, 116 Ga.App. 633, 158 S.E.2d 259, for the proposition that litigants who have not contracted for an attorney's services cannot generally be held liable for his fee, though they may have directly or indirectly benefited therefrom. Under its fourth and last proposition, Royal points to certain services its counsel G, contributed in bringing plaintiff's cause of action against the Wooleys to a successful conclusion, and it argues that, in such a situation, it would be wrong and inequitable to imply a contract for it to pay B an attorney's fee [in addition to paying its own attorney, G], citing Cary v. Phoenix Ins. Co., 83 Conn. 690, 78 A. 426, Pontiac Mut. County Fire & Lighting Ins. Co. v. Sheibley, 279 Ill. 118, 116 N.E. 644, and Washington Fire & Marine Ins. Co. v. Hammett, 237 Ark. 954, 377 S. W.2d 811.

Insofar as it contains any language pertinent to the issue before us, our statute, 85 O.S.1971, § 44, still reads as it did when it was first enacted in 1915. Referring to one who, like plaintiff, is entitled to workmen's compensation benefits from his employer, as well as having a tort claim against a third party, not in the same employ, said statute has always read:

"* * * If he [the injured employee] elects to take compensation under this Act, the cause of action against such other [the third party] shall be assigned to the insurance carrier liable for the payment of such compensation, and if he elects to proceed against such other person or insurance carrier, as the case may be, shall contribute only *the deficiency,* if any, between the amount of the *recovery* against such other person actually collected, and the compensation provided or estimated by this Act for such case. The compromise of any such cause of action by the workmen at any amount less than the compensation provided for by this Act shall be made only with the written approval of the Commission [now Industrial Court], and otherwise with the written approval of the person or insurance carrier liable to pay the same." [Emphasis added.]

While it is true that, under the above quoted statute, if plaintiff had not instituted the present tort action against defendant, Royal might have done so, but, in that event, Royal would have had to establish the value of its cause of action against defendant as being a greater sum that it had paid plaintiff in workmen's compensation benefits, before it could have realized any monetary recoupment from him out of its subrogation right against defendant. See Utilities Ins. Co. v. McBride [U.S.C.A., 10th Cir.], 315 F.2d 553, 557. Thus, it will be seen that in the effectuation of the settlement here involved, a distinct service was rendered Royal, that it could not otherwise have obtained without presumably paying some attorney [other than plaintiff's] for that service. By the settlement made without Royal being a party to the suit, it appears that Royal deliberately avoided the hazard of going before a jury, cognizant of the fact that a claimed tort liability "was covered, at least in part", by insurance Public Service Company of Oklahoma v. Black & Veatch (U. S.C.A., 10th Cir.), 467 F.2d 1143, 1144. And, due to plaintiff's cooperation, there was enabled the creation of a fund assuredly more than sufficient from which to obtain Royal's recoupment, when otherwise the amount of money obtained from defendant and/or Allstate—by trial or otherwise—might not have been large enough to reimburse Royal for the workmen's compensation benefits it had paid plaintiff.

We are not here concerned with the situation where a workmen's compensation insurance beneficiary settles his third party tort action for more than his compensation benefits, *without the consent of the insurance carrier* [See McBride, supra, 315 F.2d p. 557]. Nor are we concerned with the question of priority between Royal's subrogation right and any attorney's lien that may have arisen from some express contract B may have had with plaintiff for some amount certain, or capable of being made certain, by application of a percentage formula to the sum of money obtained for plaintiff. In this connection, notice Aetna Casualty & S. Co. v. Associates Transports, Inc., Okl., 512 P.2d 137, 140. Not only was no such express contract for an attorney's services introduced in evidence, but we find nothing in the language used in plaintiff's motion to suggest that his present claim against Royal is based upon any such contract. On the contrary, all the motion asks for is "a reasonable attorney fee" as in cases where such fee is "not fixed by contract" [5 O.S.1971, § 9], but is determined on a quantum meruit basis.

In some of the States possessing large industrial centers, Workmen's Compensation Laws have been amended to dispel doubt as to attorneys' fees in situations like the present one. For instance, a modern amendment to the Illinois Law reads as follows [with emphasis added]:

\* \* \* \* \* \*

" \* \* \*·

"Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and *where the services of an attorney at law of the employee . . . have resulted in or substantially contributed to the procurement by* suit, *settlement* or otherwise *of the proceeds out of which the employer is reimbursed,* then, in the absence of other

agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement. \* \* \*" 48 Smith-Hurd Ill.Ann.Stats., § 138.5(b).

In other States, whose Workmen's Compensation Laws [like Oklahoma's] had no such amendment, the matter was left to court decisions interpreting the rather meager wording of such laws, or applying the law as to attorneys' services, generally, or common law principles of subrogation, or implied contract, or unjust enrichment, or some combination of these. See, for instance, Hardware Mut. Cas. Co. v. Butler, 116 Mont. 73, 148 P.2d 563, and other cases cited in Cole v. Morris, Mo., 409 S.W.2d 668, 670, together with Wilson v. Pittsburgh B. & I. Works, 85 Pa.Super. 537, and other cases listed in the footnotes to 101 C.J.S. Workmen's Compensation § 1040e, at pp. 612 and 613, and § 1042 at pp. 622 and 623. In Wilson, supra, which was promulgated in the same year Section 44, supra, was adopted [1915] and stood the test of time until the Pennsylvania Law was amended see Conrad v. Aero-Mayflower Transit Co., 152 Pa.Super. 477, 33 A.2d 91, the Court said concerning a third party action brought by an employer:

"It is well known that such an action does not prosecute itself; that lawyers must be employed and paid; and the question naturally arises by whom are their fees and expenses to be paid. The only interest of the employee in the action is in case the verdict should exceed the compensation payable to him by the employer; it would seem unjust to make him pay the expenses of a successful suit out of his compensation, to the sole benefit of the employer, if the verdict did not exceed such compensation. The interest of the employer, on the other hand, is immediate reimbursement up to the amount of the compensation paid and relief from future payments, and unless the verdict is in excess of the compensation payable by him, he alone is benefited by the recovery; just as in this case,

every dollar of the net recovery goes to the employer, none to the injured employee.

\* \* \* \* \* \*

But the attorney who prosecuted the action and secured the fund is entitled to retain out of the money paid to him satisfaction of the verdict *reasonable compensation* for his services in the case and reimbursement of his expenses in connection therewith. \* \* \*" [Emphasis added.]

It will be seen from the foregoing that by preparing and filing this action, and, after depositions were taken, by convincing the Wooleys and those representing them and the insurance carrier, Allstate, that they were liable and that a release and discharge of that liability was worth $17,000.00, B rendered Royal a service which might have required as much skill and ability, or more, than would have been required in a formal trial of the case. See Boulden v. Herring, (U.S.D.C., W.D., Ark.), 126 F.Supp. 885, 896. Therefore, while we are not certain what the trial court was thinking of when, in his order, he wrote that he did not find B had performed "any extraordinary service on Royal-Globe's behalf", if what he intended to say was that B did not perform any service for Royal that he would not otherwise have performed for plaintiff, then the findings upon which his judgment was apparently based were not sufficient to support it; and we so hold. We have considered the cases cited by Royal, but, under the circumstances indicated in this case, we do not think they furnish authority for the trial court's order. In this connection, notice Charles Seligman Distributing Co. v. Brown, Ky., 360 S.W.2d 509, 511. Accordingly, we grant certiorari, affirm the decision of the Court of Appeals as herein modified, reverse the order appealed from denying plaintiff's motion for a new trial, and direct the trial court to grant him a new trial. At such new trial, said court should determine whether or not there was an implied contract between Royal and B for Royal to pay him a reasonable attorney's fee for his services to it, under the principles approvingly referred to in Thomas v. Lewman, 190 Okl. 37, 41, 120 P.2d 341, 346, Tomasso v. Sorbets, Mo. App., 147 S.W.2d 151, and other cases cited in 17 Am.Jur.2d, Contracts, §§ 3 and 4, 66 Am.Jur.2d, Restitution and Implied Contracts, § 20, and the annotation at 78 A.L. R.2d 318, 331. Said court should not base its determination upon principles of common law subrogation incompatible with previous expressions of this Court in Aetna Casualty & S. Co., supra, and Updike Advertising System v. State Industrial Com'n., Okl., 282 P.2d 759, 763. If the court determines that B is entitled to an attorney's fee from Royal, then he should determine what amount of money is reasonable for such fee under the circumstances, taking into consideration, among other things, the sum recovered for Royal, the difference between the fee Royal is obligated to pay G and the amount it would have been obligated to pay him, or other competent counsel, if his efforts had been *solely* responsible for the settlement between plaintiff and defendant. When the court determines such fee, it should sustain plaintiff's hereinbefore described motion and decree said fee to constitute an attorney's lien upon Royal's part of the $17,000.00 in settlement money, no portion of which should be disbursed to Royal without securing payment of said fee.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, BERRY, HODGES, LAVENDER, and SIMMS, JJ., concur.

DOOLIN, J., concurs in result.