**Wendell PHILLIPS and Wanda Phillips,**
**Plaintiffs–Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY, an Illinois**
**corporation, Defendant–Appellee.**

No. 94–6414.

United States Court of Appeals,
Tenth Circuit.

Jan. 22, 1996.

Ed Abel (Lynn B. Mares with him on the briefs) of Abel, Musser, Sokolosky, Mares, Haubrich, Burch & Kouri, Oklahoma City, Oklahoma, for plaintiffs-appellants.

Robert W. Hayden of Speck, Easter & Hayden, Oklahoma City, Oklahoma, for defendant-appellee.

Before MOORE, BRORBY and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

Plaintiffs Wendell and Wanda Phillips appeal the district court's grant of summary judgment in favor of their uninsured/underinsured motorist insurance carrier, defendant State Farm Mutual Automobile Insurance Company, on their claim State Farm was obligated to pay a portion of the attorney fees and costs they incurred to obtain a settlement from a third-party tort-feasor. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I

On March 10, 1992, Wendell Phillips and Robert Gregson were driving southward on Interstate 19 in Pima County, Arizona. Mr. Gregson steered the vehicle to the left and crashed into a guardrail. Mr. Phillips suffered serious injuries as a result of the accident.

At the time of the accident, Mr. Gregson had automotive liability coverage in the amount of $1.5 million. Despite this fact, Mr. and Mrs. Phillips brought this action against State Farm to recover on their uninsured/underinsured motorist insurance policy. It appears Mr. and Mrs. Phillips did not discover Mr. Gregson was insured until sometime after they filed their complaint, because they allege therein "[a]t the time of the collision complained of, Robert F. Gregson was an uninsured or underinsured motorist."

In February 1993, Mr. and Mrs. Phillips settled their claims against State Farm for $200,000, the combined limit of their uninsured/underinsured motorist insurance policy. As part of the settlement, Mr. and Mrs. Phillips signed a preprinted "Release and Trust Agreement" providing that

> to the extent of any payment made [under the uninsured/underinsured motorist policy], the undersigned agrees to hold in trust for the benefit of [State Farm] all rights of recovery which he shall have against any person or organization legally liable for [his] bodily injuries, and assigns to [State Farm] the proceeds of any settlement with or judgment against such person or organization.

The Release and Trust agreement also incorporated a typewritten appendix stating

> The parties expressly understand and agree that a dispute exists between [State Farm] and Wendell Phillips, the under-

signed, regarding the proper allocation of attorneys' fees and costs incurred or to be incurred in the further prosecution of the undersigned's claim for injuries which he has or may have sustained as a result of the accident described herein. In this regard, Mr. Phillips claims a right to pro rata reimbursement from [State Farm] for any attorneys' fees and/or costs which he incurs in the further prosecution of his claim, to the extent that such further prosecution of his claim inures to the benefit of [State Farm]. [State Farm] expressly denies that Mr. Phillips has such a right and claims that it is entitled to be reimbursed for all amounts which it has paid pursuant to this agreement, without the deduction of a pro rata share of the attorneys' fees and/or costs referred to herein.

Nothing in this Release and Trust Agreement shall be construed as a waiver or abandonment of the parties' respective claims regarding the matter in dispute herein. The parties understand and agree that their claims regarding the matter in dispute shall be preserved for the determination of the Court at the conclusion of the further litigation resulting from the accident referenced herein.

Mr. and Mr. Phillips later dismissed their action against State Farm.

After settling their claims against State Farm, Mr. and Mrs. Phillips sued Mr. Gregson in state court in Arizona and recovered a $400,000 settlement. State Farm participated in the settlement conference by telephone. Pursuant to their retainer agreement, Mr. and Mrs. Phillips were obligated to pay their attorneys one-third of the settlement, which is $133,333.33. The record also contains evidence showing Mr. and Mrs. Phillips' attorneys incurred some $6,200 in unreimbursed costs pursuing the action against Mr. Gregson.

Mr. and Mrs. Phillips then moved to reopen their case against State Farm so the district court could determine State Farm's subrogation interest in the $400,000 settlement. The district court granted the motion and reopened the case. State Farm later moved for summary judgment, asserting it was entitled to $200,000 of the $400,000 set-tlement pursuant to the Release and Trust Agreement, and it was not obligated to pay a pro rata share of the attorney fees and costs Mr. and Mrs. Phillips incurred to secure the settlement with Mr. Gregson. The district court agreed and granted summary judgment in favor of State Farm. This appeal followed.

## II

■ Mr. and Mrs. Phillips concede State Farm is entitled to subrogation under Oklahoma law and the terms of the Release and Trust Agreement. They also concede they never entered into an express agreement with State Farm allocating attorney fees and costs. However, Mr. and Mrs. Phillips contend, as a matter of equity, State Farm should be required to pay a pro rata share of the expenses they incurred pursuing their action against Mr. Gregson, and the district court should have compromised State Farm's $200,000 subrogation interest by such an amount.

The Oklahoma Supreme Court has never decided the precise issue now before us. Thus, we "must determine what decision the state court would make if faced with the same facts and issue." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988); *see also Fields v. Farmers Ins. Co.*, 18 F.3d 831, 834 (10th Cir.1994); *Adams–Arapahoe Sch. Dist. No. 28–J v. GAF Corp.*, 959 F.2d 868, 870–71 (10th Cir.1992). In doing so, we consider a number of authorities, including analogous decisions by the Oklahoma Supreme Court, the decisions of the lower courts in Oklahoma, the decisions of the federal courts and of other state courts, and "the general weight and trend of authority." *Farmers Alliance Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir.1980); *see also Armijo*, 843 F.2d at 407; *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir.1980).

The Oklahoma Supreme Court's decision in *Carter v. Wooley*, 521 P.2d 793 (Okla.1974), is virtually indistinguishable from the case now before us. Mr. Carter was involved in an accident while driving a company car. He later sued the driver of the other car, Mr. Wooley, and his wife in two separate law-

suits. While these actions were pending, Mr. Carter filed a claim for worker's compensation benefits against his employer and its worker's compensation insurance carrier and received some $5,700 in benefits. While the actions against Mr. and Mrs. Wooley were pending, the attorney representing the worker's compensation insurance carrier wrote Mr. Carter's attorney a letter stating he was aware of the actions against the Wooleys, the company did not wish to intervene, it was his understanding Mr. Carter's attorney agreed to protect the insurance company's subrogation claim, and he and the company would provide any assistance needed to bring the action against the Wooleys to a successful conclusion. With the company's consent, Mr. Carter later settled his actions against the Wooleys for $17,000.

Mr. Carter then asked the trial court to fix reasonable attorney fees and determine which portion of that amount he should pay and which portion the insurance carrier should pay. The trial court denied the motion. The Oklahoma Supreme Court reversed. It reasoned that "in the effectuation of the settlement here involved, a distinct service was rendered [to the insurance company], that it could not otherwise have obtained without presumably paying some attorney (other than [Mr. Carter's]) for that service." *Carter*, 521 P.2d at 796. Unless the insurance company paid some portion of the costs and the fees due Mr. Carter's attorney, Mr. Carter would be forced to pay the entire sum, which would reduce the amount Mr. Carter received as compensation for his injuries. *Id.* at 797–98. The Oklahoma Supreme Court remanded the case to the trial court with direction to determine whether there was an implied contract between Mr. Carter's attorney and the insurance company

obligating the company to pay him reasonable attorney fees. *Id.* at 798.

■ For the following reasons, we conclude the Oklahoma Supreme Court would apply *Carter* to the case now before us. First, the facts of *Carter* are strikingly similar to the facts of this case. Second, there is no meaningful difference between the relevant statute in *Carter*, the version of Okla. Stat. tit. 85, § 44, effective in 1974, and the relevant statute in this case, Okla.Stat. tit. 36, § 3636(E).[1] Both provide an insurer has a right to subrogation under the circumstances present in *Carter* and in this case, and neither specifically allow for a pro rata allocation of attorney fees and costs. In fact, it is unclear whether the result would be different even if relevant statutes were somewhat different. Under Oklahoma law, the right to subrogation arises out of equity and exists independent of any statutory rights the legislature may have conferred. *Prettyman v. Halliburton Co.*, 841 P.2d 573, 577 n. 1 (Okla.1992).

Third, shortly after the Oklahoma Supreme Court announced its decision in *Carter*, the Oklahoma Legislature amended Okla. Stat. tit. 85, § 44, to codify its holding. As amended, the statute provides in pertinent part:

Whenever recovery against such other person is effected without compromise settlement by the employee or his representatives [*i.e.*, the settlement exceeds the workers' compensation benefits paid to the employee], the employer or insurance company having paid compensation under the Workers' Compensation Act shall be entitled to reimbursement as hereinafter set forth and shall pay from its share of said

1. The former provided in pertinent part:
    If [an injured employee] elects to take compensation under [the Workers' Compensation] Act, the cause of action against such other [i.e., a third party] shall be assigned to the insurance carrier liable for the payment of such compensation, and if he elects to proceed against such other person or insurance carrier, as the case may be, shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated by [the Workers' Compensation] Act for such case.

The latter statute provides in pertinent part:
    In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made.

reimbursement a proportionate share of expenses, including attorneys fees, incurred in effecting said recovery to be determined by the ratio that the amount of compensation paid by the employer bears to the amount of the recovery effected by the employee.

Okla.Stat. tit. 85, § 44(a). The Oklahoma Supreme Court has summarized the purpose of the amendment as follows:

The only mischief the legislature sought to correct by the amendment at issue was the occurrence of an injured worker being forced to bear all costs and attorney fees involved in obtaining recovery from the third party tortfeasor, without a clear right to demand and receive a proportionate share from the insurer. By the amendment the legislature intended to force insurers to carry their share of the costs involved in obtaining the proceeds which benefit their recoveries. The certain goal of the legislature is to provide for payment of a proportionate share of expenses and attorney fees incurred in effecting recovery of the fund from which the insurer will recoup its subrogation compensation payment in those instances where recovery is not made by compromise settlement.

*Prettyman*, 841 P.2d at 581. The fact the Oklahoma Legislature has codified the holding in *Carter* and endorsed its rationale reinforces our view *Carter* carries great precedential weight, that it is consistent with the overall public policy of Oklahoma in this area of law, and that the Oklahoma Supreme Court would extend it to apply to the case now before us.

Fourth, many courts in other states have required subrogees to pay a share of the attorney fees and costs their insureds/subrogors incurred in prosecuting an action against a third-party tort-feasor in cases comparable to the one now before us, even though such apportionment was not expressly authorized by statute.[2] Furthermore, several states have enacted statutes requiring such apportionment, many of which codified prior case law. *See Bloomer v. Liberty Mut. Ins. Co.*, 445 U.S. 74, 88 n. 15, 100 S.Ct. 925, 933 n. 15, 63 L.Ed.2d 215 (1980) (citing examples from Idaho, Illinois, Michigan, New York, Pennsylvania, Virginia, and Washington). Thus, the approach taken in *Carter* is consistent with the "the general weight and trend of authority" in other states. *Farmers Alliance*, 619 F.2d at 888; *Armijo*, 843 F.2d at 407; *Hartford*, 617 F.2d at 569.

State Farm has advanced five basic arguments why we should not apply *Carter* to this case, none of which are persuasive. First, State Farm contends the Phillips' uninsured/underinsured motorist insurance policy contains language that precludes apportionment of attorney fees and costs. We disagree. The relevant section, which State Farm quotes in its brief, says nothing about

2. *See, e.g., Blue Cross & Blue Shield of Ala. v. Freeman*, 447 So.2d 757, 758–60 (Ala.Civ.App. 1983); *Commercial Standard Ins. Co. v. Combs*, 249 Ark. 533, 460 S.W.2d 770, 775 (1970); *Quinn v. State*, 15 Cal.3d 162, 124 Cal.Rptr. 1, 539 P.2d 761 (1975); *County Workers Comp. Pool v. Davis*, 817 P.2d 521, 525–526 (Colo.1991); *Phillips v. Liberty Mut. Ins. Co.*, 253 A.2d 502, 505–06 (Del.1969); *Hall v. Young's Dairy Products Co.*, 98 Idaho 562, 569 P.2d 907, 909–10 (1977); *Baier v. State Farm Ins. Co.*, 66 Ill.2d 119, 5 Ill.Dec. 572, 361 N.E.2d 1100 (1977); *Charles Seligman Distrib. Co. v. Brown*, 360 S.W.2d 509, 510–11 (Ky.1962); *Moody v. Arabie*, 498 So.2d 1081, 1084–85 (La.1986); *Foremost Life Ins. Co. v. Waters*, 125 Mich.App. 799, 337 N.W.2d 29, 32–33 (1983); *National Union Fire Ins. Co. v. Grimes*, 278 Minn. 45, 153 N.W.2d 152, 156 (1967); *Hardware Mut. Casualty Co. v. Butler*, 116 Mont. 73, 148 P.2d 563, 568 (1944); *St. Paul Fire & Marine Ins. Co. v. Truesdell Distrib. Corp.*, 207 Neb. 153, 296 N.W.2d 479, 483 (1980); *Nevada Bell v. Hurn*, 105 Nev. 211, 774 P.2d 1002 (1989); *Hedgebeth v. Medford*, 74 N.J. 360, 378 A.2d 226, 230 (1977); *Amica Mut. Ins. Co. v. Maloney*, 903 P.2d 834, 839–41 (N.M. 1995); *State Farm Mut. Auto. Ins. Co. v. Clinton*, 267 Or. 653, 518 P.2d 645, 647 (1974); *Bowen v. American Family Ins. Group*, 504 N.W.2d 604, 605–07 (S.D.1993); *Travelers Ins. Co. v. Williams*, 541 S.W.2d 587, 589–90 (Tenn.1976); *Street v. Farmers Ins. Exch.*, 609 P.2d 1343, 1346 (Utah 1980); *State Farm Mut. Auto. Ins. Co. v. Geline*, 48 Wis.2d 290, 179 N.W.2d 815, 820–21 (1970); *Iowa Nat. Mut. Ins. Co. v. Huntley*, 78 Wyo. 380, 328 P.2d 569, 575 (1958); *See generally,* John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds*, 87 Harv. L.Rev. 1597, 1621–25 (1974); James B. Atleson, *Workmen's Compensation: Third Party Actions and the Apportionment of Attorney's Fees*, 19 Buff.L.Rev. 515 (1970); J.F. Riley, Annotation, *Right of Attorney for Holder of Property Insurance to Fee Out of Insurer's Share of Recovery from Tortfeasor*, 2 A.L.R.3d 1441 (1965).

the apportionment of attorney fees and costs incurred in an action by the insured against a third-party tort-feasor. Rather, the section provides:

> (1) [State Farm is] subrogated to the extent of [its] payments to the proceeds of any settlement: (a) the injured *person* recovers from any party liable for the *bodily injury;* and (b) which together with the payments made under this coverage, exceed the *insured's* damages for *bodily injury.*

This section simply makes it clear State Farm has a subrogation interest in any settlement the Phillips may recover against a third-party tort-feasor, not to exceed the total amount paid under the policy, a point which the Phillips concede. Indeed, even if the section were ambiguous, "[u]nder Oklahoma law, a contract of insurance ordinarily must be construed liberally in favor of the insured and strictly against the insurer where there exists any ambiguity, doubt or uncertainty as to its meaning." *An–Son Corp. v. Holland–America Ins. Co.,* 767 F.2d 700, 703 (10th Cir.1985) (citing *Continental Casualty Co. v. Beaty,* 455 P.2d 684, 688 (Okla.1969)).

Second, State Farm contends the Phillips waived their right to claim attorney fees when they executed the Release and Trust Agreement. This contention is also unavailing. There is nothing in the preprinted agreement itself that amounts to such a waiver, and the typewritten Appendix specifically provides "Nothing in this Release and Trust Agreement shall be construed as a waiver or abandonment of the parties' respective claims regarding the matter in dispute herein [i.e., attorney's fees and costs]. The parties understand and agree that their claims regarding the matter in dispute shall be preserved for the determination of the Court at the conclusion of the further litigation resulting from the accident referenced herein."

Third, State Farm emphasizes that Oklahoma follows the American rule, which provides "attorneys' fees are not allowed in the absence of a statute or specific contractual authority or where they are considered part of the damages suffered by a party." *Peabody Galion Corp. v. Kropp,* 658 P.2d 1155, 1157 (Okla.1983). According to State Farm, this means the Phillipses cannot recover attorney fees and costs in this case. This contention lacks merit for at least two reasons. First, under Oklahoma law, "[t]here are, of course, exceptions to the general principle that absent a contract or statute authorizing an award of attorney fees, a court may not award them." *Id.* at 1157 n. 3. Second, the American rule was well established in Oklahoma when the Supreme Court decided *Carter* in 1974. *See, e.g., Hanska v. Hanska,* 395 P.2d 648, 650 (Okla.1964). The Oklahoma Supreme Court did not see the American rule as an obstacle when it decided *Carter,* and therefore neither do we.

Fourth, State Farm draws our attention to Okla.Stat. tit. 36, § 3629(B),[3] which allows an insured to recover attorney fees in an action against his insurer if the insured recovers more than the insurer initially offered. The statute specifically provides, however, that it "shall not apply to uninsured motorist coverage." Given that the Oklahoma legislature specifically precluded insureds from recovering attorney fees in actions against uninsured/underinsured motorist insurance carriers under Okla.Stat. tit. 36, § 3629(B), State Farm contends, we can infer the Oklahoma legislature does not intend for such insureds to recover attorney fees incurred in actions against a third-party tort-feasor.

We reject this contention for two reasons. First, State Farm has not provided any legislative history explaining why the Oklahoma legislature excluded uninsured/underinsured motorist policies from the purview of Okla. Stat. tit. 36, § 3629(B). Indeed, the legisla-

---

**3.** This statute provides in pertinent part:

> It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party.... This provision shall not apply to uninsured motorist coverage.

ture may have done so not because it did not intend for uninsured/underinsured motorist insurance carriers to pay their insureds' attorney fees if the insureds were "prevailing parties," but because it did not intend for insureds to pay their insurers' attorney fees if the insurers prevailed. In the absence of any clear evidence in either the language of the statute or its legislative history, we decline to speculate regarding the legislature's intent.

Second, State Farm has not cited any case law holding Okla.Stat. tit. 36, § 3629(B), applies to actions other than those between an insured and his insurer. To the contrary, as of 1985, all of the Oklahoma cases interpreting this statute involved actions by insureds against their insurers, *An–Son Corp.*, 767 F.2d at 703, and we have not found any later cases applying it outside that context. Thus it appears Okla.Stat. tit. 36, § 3629, simply does not apply to action by an insured against a third-party tort-feasor. This being the case, it is impossible to draw any inferences from this statute about the Oklahoma legislature's views on which party should pay the attorney fees incurred in such a third-party action.

Finally, State Farm asserts it would be inequitable to apply *Carter* to this case for two basic reasons. First, State Farm points out Mr. Gregson was not uninsured or underinsured at the time of the accident. Apparently, State Farm believes it would be unfair to require it to deduct part of the Phillips' attorney fees from its $200,000 subrogation interest because it was not obligated to pay uninsured/underinsured motorist benefits to the Phillips in the first place.

At the outset, it is difficult to imagine State Farm would pay the limit on the Phillips' policy by way of settlement unless it thought the Phillips could prove it was legally obligated to do so. At oral argument, counsel for State Farm made it clear that was precisely the case. Counsel admitted the Phillips had never falsely represented Mr. Gregson was uninsured or underinsured, and that the settlement was "voluntary based on an uncertainty really whether we owed it or not." The uncertainty, counsel for State Farm explained, existed because law govern-

ing uninsured/underinsured motorist coverage in Oklahoma was in a "state of development" due to some "unfortunate language" in certain recent opinions of the Oklahoma Supreme Court suggesting an insured does not have to prove the tort-feasor was uninsured or underinsured in order to recover on an uninsured/underinsured motorist policy. Whether State Farm was or was not liable to the Phillips under Oklahoma law, the fact remains State Farm found it sufficiently likely it would be held liable that it paid the limit on the Phillips' policy. We do not consider it inequitable for State Farm to bear a portion of the attorney fees and costs the Phillips incurred in recouping that payment from Mr. Gregson.

Second, State Farm asserts, the payment was essentially an "interest free loan" to the Phillips, and thus they have already benefitted enough. This argument is specious: the $200,000 payment in this case is no more an "interest free loan" than the worker's compensation payment in *Carter,* and yet this did not dissuade the Oklahoma Supreme Court from holding as it did.

### III

■ In light of the foregoing, we conclude *Carter* governs this case. We must therefore determine whether the district court correctly applied *Carter* and, assuming it did so, whether it was correct to grant summary judgment in favor of State Farm. We review each of these matters de novo. *Wolf v. Prudential Ins. Co.,* 50 F.3d 793, 796 (10th Cir. 1995) (summary judgment reviewed de novo); *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991) ("a court of appeals should review de novo a district court's determination of state law"); *Butler v. Union Pacific R.R. Co.,* 68 F.3d 378, 379 (10th Cir.1995) (same).

■ In *Carter,* the court stated its decision in *Thomas v. Lewman,* 190 Okla. 37, 120 P.2d 341, 346 (1941), and certain out-of-state authorities governed the formation of implied contracts in this context. *Carter,* 521 P.2d at 798. The plaintiff in *Thomas* contended, and the Oklahoma Supreme Court agreed, that

where services are rendered by an attorney at the request of another, or where the benefits of such services are knowingly accepted, a promise to pay therefor will be implied, unless the circumstances show that the services were intended to be gratuitous, and that where there is even slight proof of employment of the attorney by [the] client, the fact that the latter stood by without objection and allowed the attorney to render valuable services in his behalf will estop him to deny the fact of employment.

*Thomas*, 120 P.2d at 346. However, an attorney cannot recover compensation from an individual on the ground there was an implied contract between them if he merely confers "incidental benefits and advantages" to him while representing either another party or himself. *Id.* Whether such an implied contract exists is ordinarily a question of fact to be determined in light of "the acts of the parties in connection with the surrounding circumstances, and what was said between the parties at the time, the nature of the work done, and how the interest of the party sought to be charged [was] affected thereby." *Id.*

In concluding there was no implied contract between State Farm and the Phillips' attorneys, the district court stated:

> The Plaintiffs argue that State Farm should at least be required to bear a proportionate share of the attorneys' fees and costs [expended] in their suit against Mr. Gregson, on the theory that Plaintiffs' counsel has in some way conferred a benefit upon State Farm. *See Carter v. Wooley*, 521 P.2d 793 (Okla.1974) (worker's compensation carrier under implied contract to pay claimant's attorney who obtained a settlement from a third party tortfeasor). The Court is not persuaded that any benefit was conferred upon State Farm by Plaintiffs' counsel. Any benefit which might have been created was purely incidental and not sufficient to create an implied contract.

The district court's conclusion was not correct. It applied the same reasoning as the trial court applied in *Carter* and which the Oklahoma Supreme Court subsequently rejected. In *Carter*, the trial court held the defendant insurance company was not obligated to pay a portion of Mr. Carter's attorneys fees because Mr. Carter's attorney had not "performed any extraordinary service" on the insurance company's behalf, but that the insurance company "simply benefitted from the services that [Mr. Carter's] counsel necessarily performed in securing recovery for [Mr. Carter]." *Carter*, 521 P.2d at 795. In its opinion reversing that decision, the Oklahoma Supreme Court stated quite frankly "we are not certain what the trial court was thinking of" when it reached this conclusion. *Id.* at 798. It held if what the trial court "intended to say was that [Mr. Carter's attorney] did not perform any service . . . he would not otherwise have performed for [Mr. Carter], then the findings upon which his judgment was apparently based were not sufficient to support it." *Id.* Furthermore, it held Mr. Carter's attorneys' services could not be considered so incidental as to not merit compensation. Rather, by preparing and filing the actions against Mr. and Mrs. Wooley, taking depositions, and convincing the Wooleys and their insurance carrier to settle the actions for $17,000, they had "rendered . . . a service which might have required as much skill and ability, or more, than would have been required in a formal trial of the case." *Id.*

In this case, Mr. and Mrs. Phillips' attorneys performed essentially the same services as Mr. Carter's attorneys. Thus, in light of *Carter*, their services were not incidental. The judgment of the district court is therefore reversed and the cause is remanded for further proceedings consistent with this opinion. If the district court finds there was an implied contract, it must order State Farm to pay an attorney fee that is reasonable "under the circumstances, taking into consideration, among other things, the sum recovered for [State Farm], the difference between the fee [State Farm] is obligated to pay [its own attorney] and the amount it would have been obligated to pay him, or other competent counsel, if his efforts had been *solely* responsible for the settlement" between the Phillips and Mr. Gregson. *Carter*, 521 P.2d at 798; *see also Oliver's Sports Center, Inc. v. Na-*

*tional Standard Ins. Co.*, 615 P.2d 291, 294 (Okla.1980) (delineating "[t]he criteria for the awarding of a reasonable attorney's fee in the absence of a contract or a statute fixing the amount").

**REVERSED and REMANDED.**