Arie J. PRETTYMAN, Guardian of the Person and the Estate of Patrick John Prettyman, a Mentally Incompetent Person, Appellees,

v.

HALLIBURTON COMPANY, a Delaware Corporation, dba Halliburton Services, Appellee,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Appellant.

No. 63557.

Supreme Court of Oklahoma.

May 5, 1992.

As Amended on Denial of Rehearing Dec. 9, 1992.

574

John S. Oldfield, Michael Mancillis, Oldfield & Coker, Oklahoma City, for appellant.

Kenneth R. Webster, McKinney, Stringer & Webster, Oklahoma City, for appellee Halliburton.

Jane S. Eulberg, John W. Norman, Oklahoma City, for appellee Prettyman.

SIMMS, Justice:

This is an appeal by the workers' compensation carrier from the trial court's denial of its efforts to recover the amount of compensation benefits paid to its insured's injured worker from proceeds of a settlement reached by the worker and the negligent third party responsible for his injury. Although the settlement exceeded the amount of the compensation paid, the trial court agreed with the worker's argument that a 1975 amendment to 85 O.S.1971, § 44, required compromising the amount of the carrier's claim, and the trial court compelled the insurer to accept a lesser sum as full satisfaction of its subrogated claim.

We granted certiorari to address first impression questions regarding the proper construction of § 44, as amended, its effect on the subrogation rights of a compensation carrier and its application to settlement proceeds recovered in a third party action in an amount greater than the benefits previously paid by the carrier. The statute at issue, 85 O.S.1981, § 44, supra, with the amendatory language at issue set out in italics, provides as follows:

"(a) If a worker entitled to compensation under the Workers' Compensation Act is injured or killed by the negligence or wrong of another not in the same em-

ploy, such injured worker shall, before any suit or claim under the Workers' Compensation Act, elect whether to take compensation under the Workers' Compensation Act, or to pursue his remedy against such other. Such election shall be evidenced in such manner as the Administrator may by rule or regulation prescribe. If he elects to take compensation under the Workers' Compensation Act, the cause of action against such other shall be assigned to the insurance carrier liable for the payment of such compensation, and if he elects to proceed against such other person or insurance carrier, as' the case may be, the employer's insurance carrier shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated by the Workers' Compensation Act for such case. The compromise of any such cause of action by the workers at any amount less than the compensation provided for by the Workers' Compensation Act shall be made only with the written approval of the Court. *Whenever recovery against such other person is effected without compromise settlement by the employee or his representatives, the employer or insurance company having paid compensation under the Workers' Compensation Act shall be entitled to reimbursement as hereinafter set forth and shall pay from its share of said reimbursement a proportionate share of the expenses, including attorneys fees, incurred in effecting said recovery to be determined by the ratio that the amount of compensation paid by the employer bears to the amount of the recovery effected by the employee. After the expenses and attorneys fees have been paid, the balance of the recovery shall be apportioned between the employer or insurance company having paid the compensation and the employee or his representatives in the same ratio that the amount of compensation paid by the employer bears to the total amount recovered; provided, however, the balance of the recovery may be divided between the employer or insurance company having paid compensation and the employee or his representative as they may agree.*

*In the event that recovery is effected by compromise settlement, then in that event the expenses, attorneys fees and the balance of the recovery may be divided between the employer or insurance company having paid compensation and the employee or his representatives as they may agree. Provided, that in the event they are unable to agree, then the same shall be apportioned by the district court having jurisdiction of the employee's action against such other person, in such manner as is just and reasonable."*

The relevant facts are these. The employee, Patrick Prettyman, was very seriously injured on March 24, 1963, while working for Noble Drilling Company and was paid $152,986.95 in temporary total disability benefits and medical expenses by National Union Fire Insurance Company, Noble's workers' compensation carrier. Through his guardian, Prettyman elected to sue Halliburton in Oklahoma County District Court under § 44, for negligently causing his injuries. The action was originally brought for eleven million dollars. During the course of the litigation the parties agreed that because there was a serious question of liability, the chances for plaintiff's success were no more than 1 in 3. They decided, therefore, that six million dollars was a more reasonable probable recovery and, because the chances for a verdict were evaluated at no more than 1 in 3, Plaintiff and Halliburton settled the suit for two million dollars. As a condition of their settlement, Halliburton and Prettyman agreed that Halliburton would receive a complete release of all claims of National Union. National Union, however, was not a party to the lawsuit; it chose not to participate in the settlement process and did not consent to the terms. After the terms of the settlement were agreed to by the parties and the proceeds were paid by Halliburton and placed in escrow, Prettyman filed an "Application for Compromise

of Workers' Compensation Lien" seeking to have the trial court apportion National Union's total claim from $152,986.95 to $29,205.48. Plaintiff's position was that since he had compromised his six million dollar prayer to two million dollars, accepting 33 cents on the dollar, it would be "just and reasonable" under § 44 for the compensation carrier to also accept 33 cents on the dollar in full satisfaction of its subrogated claim. Plaintiff argued this result was compelled by the amendatory provisions of § 44. He submitted that this recovery was effected by "compromise settlement" and that the carrier's recovery should therefore be compromised and it should also be ordered to reimburse plaintiff for its fair share of costs and attorney fees as directed by the statute. Under Plaintiff's proposed formula those figures were as follows:

| | | | |
|---|---|---|---|
| 1. Total workers' compensation claim | | | $152,986.95 |
| 2. Apportionment of recovery (33% × $152,986.95) = | | | 50,485.69 |
| 3. Apportionment of attorney's fee (40% × $50,485.69) = | 20,194.27 | \ | |
| 4. Apportionment of litigation expenses (4% × $27,148.52) | + 1,085.94 | | |
| | 21,280.21 | − 21,280.21 | |
| Employer's/carrier's net recovery | | | $ 29,205.48 |

National Union intervened and argued that under the provisions of § 44, it was subrogated to the rights of plaintiff against defendant Halliburton for the full amount of the compensation payments made to Prettyman. National Union contended there, as it has on appeal, that its right to recoup the entire amount of its $150,000.00 subrogated interest was protected by § 44, and that the only changes effected by the amendment provided for sharing costs and expenses in third party suits. It argued that there was no basis for plaintiff's claim that § 44, as amended, required or justified compromising its claim in the same proportion as plaintiff had willingly compromised his lawsuit, or in any other proportion. Defendant Halliburton asserted before the trial court, as it has on appeal, that it has fully met all obligations to plaintiff and intervenor by reason of the settlement with plaintiff and escrow of an amount representing all compensation payments which had been paid by intervenor to Prettyman.

The trial court agreed with plaintiff's assessment of § 44 and entered its order compelling National Union to accept $29,205.48 as full and complete settlement of its total subrogation interest. On appeal, the Court of Appeals reversed the trial court upholding National Union's argument that it could not be bound by the trial court's apportionment of its claim since it had never assigned its subrogated interest to plaintiff and had not participated in, or consented to, the negotiation and settlement of the claim.

Until the 1975 amendment, § 44 had existed in essentially unchanged form since 1915. Without question, the purpose of the statute had always been to protect the right of employers and their insurers to be fully subrogated to the claims of injured workmen against third party defendants, and to guard against the employee receiving a double recovery; one from the employer and one from the tort-feasor. See *Parkhill Truck Co. v. Wilson*, 190 Okl. 473, 125 P.2d 203 (1942).

In general, the Workers' Compensation Act was enacted for the benefit of workers injured in covered employment, providing compensation for injuries without regard to negligence at a rate fixed by the legislature. The legislature, we have held, did not intend the enactment of the Work-

ers' Compensation Act to abrogate, modify or affect in any way the worker's common law right to exact payment for his injuries from a negligent third party not in the same employ who causes the personal injury. *Parkhill Truck Co. v. Wilson,* supra; *DeShazer v. National Biscuit Co.,* 196 Okl. 458, 165 P.2d 816 (1946); *Travelers Insurance Company v. Leedy,* 450 P.2d 898 (Okl.1969). Where injuries are caused by a third party's negligence, § 44 is designed to protect the subrogation rights of the employer and his insurance carrier to the full extent of the compensation benefits paid the injured employee, and also to guard against the employee receiving double recovery. *Parkhill Truck Co. v. Wilson,* supra; *DeShazer v. National Biscuit Co.,* supra; *Travelers Insurance Co. v. Leedy,* supra; *German v. Chemray, Inc.,* 564 P.2d 636 (Okl.1977); *LeeWay Motor Freight v. Yellow Transit Fr. Lines,* 251 F.2d 97 (10th Cir.1957).

■ We have recognized that the legislature did not intend the enactment of the Workers' Compensation Act to abrogate or modify rights of the insurance carrier who seeks indemnification for the amount paid by it because of its contractual obligation,[1] and once the insurer is subrogated, § 44 protects its right to maintain an action against the third party tort-feasor in its own name. *Parkhill Truck Co. v. Wilson,* supra; *Stinchcomb v. Dodson,* supra; *State Insurance Fund v. Smith,* 184 Okl. 552, 88 P.2d 895 (1939). *Traveler's Insurance Co. v. Leedy,* supra; *Bell v. Meadors,* 534 P.2d 1288 (Okl.1975).

We have held that while § 44 does not modify or affect in any way an injured employee's common law rights against a third party tortfeasor, it does provide the procedure for the employee to follow in pursuing his common law remedy. The procedural sequence set forth by § 44 has remained constant since 1915 regarding the requirements that:

(1) An injured worker must elect which liability to pursue first, whether to take compensation under the Act or pursue his remedy against the third party;

(2) An injured employee who files a claim for compensation must assign the cause of action against the third party defendant to the employers insurance carrier;

(3) If the worker elects to proceed against the third party the employer's carrier shall contribute only a deficiency, if any, between the amount of recovery against such other person actually collected, and the compensation provided or estimated by the Workers' Compensation Act; and,

(4) Any compromise of a cause of action by the worker for an amount less than the compensation provided by the Workers' Compensation Act shall be made only with the written approval of the Workers' Compensation Court.

■ We noted in *Parkhill* that these provisions were enacted to accomplish the avowed purpose of protecting the employer and insurance carrier by giving them notice of the intention of the injured workman so that when he complied with the Act relative to his election to take compensation or assigned the cause of action and sued the third party, the employer or its carrier could follow him in the prosecution of his common law action and protect itself and

---

**1.** We have even acknowledged that an insurance carrier's right to subrogation is not dependent on § 44. Subrogation is an equitable right and where one has been subjected to liability and suffered a loss thereby on account of the negligence of another, one has a right of action against the other for indemnity. *State Insurance Fund v. Smith,* 184 Okl. 552, 88 P.2d 895 (Okl.1939); *Stinchcomb v. Dodson,* 190 Okl. 643, 126 P.2d 257 (1942); *Travelers Insurance Company v. Leedy,* 450 P.2d 898 (Okl.1969); *Aetna Casualty Company v. Associates Transports Inc.,* 512 P.2d 137 (Okl.1973); see *Staples v. Central Surety Corp.,* 62 F.2d 650 (10th Cir.1932); *Baker*

*v. Traders General Ins. Co.,* 199 F.2d 289 (10th Cir.1952). And this is no less the rule, we have held, where liability is also imposed by statute. *Stinchcomb,* supra. We have held, therefore, that the employer's insurance carrier is subrogated to the claim of the injured workman to the full extent of its compensation payment *independent* of § 44 or any provision of the Workers' Compensation Act, and that the carrier is authorized to maintain an action under the doctrine of subrogation in the absence of statute. *Stinchcomb,* supra, *State Insurance Fund v. Smith,* supra; *DeShazer v. National Biscuit Co.,* supra.

its subrogation right by requiring recoupment from the proceeds received from the third party tort-feasor.[2] The statute was never intended to work to the benefit of the employee or the third party tort-feasor. Speaking to the reasons behind the provisions, the *Parkhill* Court stated 125 P.2d at 207:

> "It is apparent that the Legislature intended that before an injured workman, coming under the protection of the Workmen's Compensation Act, whose injuries were caused by the negligence of a third party should be entitled to the extraordinary benefits of the act, he should be required to elect which liability he would pursue first. For the protection of his employer and insurance carrier who are obliged under the act to pay for injuries without regard to negligence, if an injured employee files a claim for compensation but desires first to proceed against the third party involved, he is required to assert such intention and assign his cause of action against the third party, under the rules to be prescribed by the Commission, so that in the event of recovery against the negligent third party the employer and insurance carrier may, to some extent, recoup their loss by reason of payments made for injury without regard to negligence. * * * "

Of special relevance here is the court's conclusion that:

> "In no event, with or without election, with or without assignment, with or without the payment of compensation during the time the common-law action for negligence is being prosecuted can the injured employee have the benefits of double compensation. The employer and insurance carrier are entitled to have all these protective provisions of the act complied with so that they can require recoupment in the event of recovery from the negligent third party."

■ Even plaintiff concedes that under § 44 as it existed before the amendment, there is no question but that National Un-

ion would have been able to recoup 100% of the compensation benefits it paid from the proceeds of the recovery from Halliburton. He argues that in amending the statute the legislature intended to end the employer's "free ride" in the worker's litigation process, and to encourage settlements and prevent an unreasonable carrier from forcing an injured employee to trial by simply refusing to participate in a settlement. An insurer, he submits, had been able to refuse to assist an injured worker in his third party action and then insist on being entitled to reimbursement of 100% on its compensation dollar, without paying its fair share of expenses or enduring a commensurate reduction when the worker was forced to accept less than full recovery. We are not persuaded that the amendment effects the changes urged by plaintiff.

The key to understanding the point of the amendment is the determination of the meaning of "compromise settlement". Under plaintiff's view, National Union would have been entitled to a much larger recovery on its subrogated claim if Halliburton and plaintiff had gone to trial and plaintiff had received a verdict for two million dollars rather than having recovered that amount by way of settlement because, he argues, a verdict is a recovery "effected without compromise settlement" and the proceeds would be subject to division pursuant to the formula set forth in the statute.

Plaintiff's premise, accepted by the trial court, is that the sole determining factor within the contemplation of the statute as to whether a recovery is or is not "effected by compromise settlement" is the *method* of recovery; i.e., settlement as opposed to a verdict. Plaintiff contends that in this case recovery was "effected by compromise settlement", and that since the parties could not agree on apportionment of the proceeds, the district court did as it was supposed to do, and apportioned National Union's claim in a just and reasonable man-

---

**2.** In that regard, the decisions recognize that because § 44 exists for the employer's protection and benefit, the employee's disregard of the procedural steps will not destroy or alter the employers or insurance carrier's right of subrogation. See, e.g., *Bond Marble & Tile v. Rose*, supra; *DeShazer v. Nat'l. Biscuit Co.*, supra; *Utilities Ins. Co. v. McBride*, 315 F.2d 553 (1963).

ner. Plaintiff defines "compromise settlement" as any situation such as this one where an injured worker receives less than a hundred cents on the dollar of his prayer for recovery in a settlement. Plaintiff argues that it was both just and reasonable for National Union's claim to be reduced in the same proportion as plaintiff's claim was reduced by settlement, and that the resulting loss to insurer was merely a compromise of its claim rather than a defeat of its subrogated claim.

This is not an accurate view of the point of the amendment. After consideration of the matter we find plaintiff's premise erroneous and disagree with his conclusion. While at first glance the interpretation might seem reasonable, we find the language added by amendment was not intended to, and does not, include within the meaning of a "compromise settlement" a settlement such as was reached between plaintiff and third party tort-feasor here. The words are not all inclusive and this settlement does not come within their scope. The phrase "compromise settlement" was not used inadvertently or accidentally. It is a well established specialized phrase which pertains not to the *method* of recovery but the *amount*. It has consistently and constantly meant a compromise by the injured worker with the negligent third party *for less than the amount of the workmens' compensation award.*

The amendment's use of the phrase "compromise settlement" immediately following the original words of the statute regarding an employee's compromise of an action for less than the compensation provided, is merely a continuation of the theme of § 44 which has always existed. The amount of the workers' compensation payments the injured worker is entitled to is the standard of recovery which divides and controls the consideration and procedure necessary under the statute. Numerous opinions by this Court have addressed various aspects of "compromise settlement", a phrase which may have originated with this Court, within the scope of § 44 and they have consistently considered a "compromise settlement" to mean a com-

promise reached by the injured worker against a third party for less than the amount of the workers' compensation award.

In *Sinclair Oil & Gas Co. v. State Industrial Comm'n.* 151 Okl. 228, 3 P.2d 438, 441 (1931), the Court held that the "compromise settlement" between the worker and third party "was for an amount less than the compensation provided", and since it was made without the required approval of the Commission or insurer, it was invalid. The Court stated the following regarding § 44, (then 7302 Revised Oklahoma Statutes 921), in its syllabus:

> "The compromise of any such cause of action against a third person, * * * at an amount less than the compensation provided for by the Workmen's Compensation Act, shall be made only with the written approval of the State Industrial Commission. Any such compromise settlement made by the workman without the written approval of the commission is invalid and not binding upon the commission nor the workman, whether made with or without the consent, written or otherwise, of the person or insurance carrier liable to pay compensation."

The Court reaffirmed this meaning of compromise settlement in *B & M Const. Co. v. Anglin*, 185 Okl. 543, 94 P.2d 907 (1939), where, relying on *Sinclair*, it held that a "compromise settlement", was a "compromise against a third person .... for an amount less than the compensation provided by the Workmens Compensation Act" and entered into without approval was not binding on the worker or the Commission. In *Board of County Commr's v. Hayter*, 192 Okl. 262, 135 P.2d 975 (1943), the Court held that an employer was precluded from contending a compromise settlement of the third party damage suit for an amount less than the compensation provided under the Act was invalid as not approved by the Commission or employer where it had not been properly raised. Claimant was held entitled to receive compensation less the sum paid by third party in settlement. In each of the following decisions the Court recognized that, within the terms of § 44, a

"compromise settlement" is a compromise reached between the worker and the third party for an amount less than the workers compensation award to which worker was entitled: *DeShazer v. National Biscuit Co.*, supra; *Bond Marble & Tile Office v. Rose*, 322 P.2d 1063 (Okl.1958); *Coker–Mitchell Co. v. State Industrial Court*, 450 P.2d 894 (Okl.1969).

In *Weiss v. Salvation Army*, 556 P.2d 598, 601 (Okl.1976), the injured worker and third party tort-feaser entered into an unapproved compromise settlement which did not comply with the requirements of § 44. In holding the worker would be entitled to receive the compensation award after tendering the amount received in settlement, the Court stated the following of special relevance to the instant case:

> "[T]he employer or insurer, is liable only for deficiency between amount collected and compensation allowed under the Act. The statute clearly provides a definite pecuniary standard for measuring damages, both for physical injuries and extent of an employer-insurer's liability.
>
> "Respondent could not be required to contribute any amount other than the deficiency between amount collected by compromise settlement of the third party action and amount allowed as compensation under the Act. Since this amount is controlled by pecuniary standard fixed by § 44(a), we are of the opinion respondents' claim of irreparable damage resulting from unapproved compromise settlement is unpersuasive."

See also, *Utilities Insurance Company v. McBride*, 315 F.2d 553 (10th Cir.1963).

Section 44 has always set forth this compromise as the important distinguishing act, the triggering event, in the statute. The statute has always provided that a workman receiving less than the workers' compensation payments or less than it appears the payments will be, must have his settlement approved by the court and the insurers' liability is limited to the difference between the two amounts.

■ A worker's failure to obtain approval of the Workers' Compensation Court of compromise of an action for less than the compensation provided by the Act may result in the worker being barred from proceeding further under the Act, whereas, when, as here, a third party settlement is for an amount in excess of the compensation carrier's liability neither the carrier nor the Court is required to approve it. See *T–B Gasoline Co. v. Boring*, 99 Okl. 61, 225 P. 902 (1924). The legislative intent is clear. Only by recovery of all the proceeds which have been or will be paid to a worker, will the rights of the compensation carrier be protected. Therefore a settlement for less than the proceeds previously paid will prejudice a carrier's right to reimbursement and must be approved by the court upon considerations of fairness and justice to all the parties. See generally, *Sinclair Oil & Gas Co. v. State Industrial Comm'n.* supra.

■ In the construction of statutes it is axiomatic that the statute as amended is to be construed as a consistent whole, in harmony with common sense and reason and that every part should be given effect; that amendments are to be construed together with the original act to which they relate as constituting one law and also together with other statutes on the same subject as part of a coherent system of legislation.

■ Antecedent legislative enactments may be considered in the construction of amendatory acts *in pari materia*. Words and phrases employed in the original or antecedent act will be presumed to be used in the same sense in the amendatory enactment. The original section as amended and the unaltered sections of an Act relating to the same subject matter are to be considered together. *Letteer v. Conservancy District No. 30*, 385 P.2d 796 (Okl.1963). When ascertaining legislative intent the Court must presume that when adopting the amendment, the legislature had knowledge of the law as it previously existed and had in mind the judicial construction which had been placed on that law. *Poafpybitty v. Skelly Oil Co.*, 394 P.2d 515, (Okl.1964). *Huff v. State*, 764 P.2d 183 (Okl.1988). Applying these rules of statutory construction we see no legislative intent to change the meaning and pur-

pose of the post-amendment statute. The phrase "compromise settlement" in the amendment is the same as in the antecedent case law and must be accorded the same meaning it had always had. We noted in *Poafpybitty,* supra, that the duty of the court in determining the "legislative intent" is to adhere to the construction previously placed on the statute and to construe the original language and that language within the amendment as a harmonious whole. We pointed out there that "the old law should be considered, the evils arising under it, and the remedy provided by the amendment, and *that construction of the amended act should be adopted which will best repress the evils and advance the remedy.*" 394 P.2d at 519 (emphasis in original)

The only mischief the legislature sought to correct by the amendment at issue was the occurrence of an injured worker being forced to bear all costs and attorney fees involved in obtaining recovery from the third party tort-feasor, without a clear right to demand and receive a proportionate share from the insurer. By the amendment the legislature intended to force insurers to carry their share of the costs involved in obtaining the proceeds which benefit their recoveries. The certain goal of the legislature is to provide for payment of a proportionate share of expenses and attorney fees incurred in effecting recovery of the fund from which the insurer will recoup its subrogated compensation payment in those instances where recovery is not made by compromise settlement; where the worker does not receive less than the compensation provided or estimated by the Act.

But this is not to say that the amendment somehow changed the whole focus of the statute. The entire purpose of § 44 would be destroyed if the statute were interpreted in the manner urged by plaintiff. To force the insurer to accept $29,000.00 as a "compromise" or "apportionment" of its $152,000.00 subrogated claim when the employee has recovered a much greater sum from the tort-feasor would defeat the underlying intent of § 44: the protection of the employer's right of full subrogation and the prevention of double recovery of the employee. We do not believe it was the intent of the legislature to institute such a substantial and startling change in the statutory scheme with this amendment. Our holding today is in keeping with the policies intended to be served by § 44 both before and after the amendment. An opposite holding would effect the perverse results of depriving an insurer of its statutorily protected subrogated claim and allowing an employee double recovery.

Whether there is a compromise settlement, that is whether the insured employee accepts from the third party tort-feasor a settlement which is less than the amount of workers' compensation payments or the estimated total of those payments, is the focus of inquiry. When, such as in this case, the employee receives an amount greater than the workers' compensation award, it is not a recovery effected by compromise settlement within the contemplation of the statute.

It seems probable that it is no mere coincidence that the amendment of § 44 closely followed our decision in *Carter v. Wooley,* 521 P.2d 793 (Okl.1974). There we addressed for the first time the question whether the attorney for an injured workman was entitled to a fee from the compensation carrier for his services in obtaining a fund from which the carrier could recoup the amount of benefits it had paid the workman. There, as in the instant case, the settlement of the tort action was for more ($17,000) than the amount of the compensation benefits paid ($5,500). We recognized that the carrier was entitled under its § 44 subrogation right to recover the full amount of benefits it had paid. We noted that § 44 had existed in essentially the same form since 1915, and that while some states had amended their Workmens' Compensation Laws to provide for attorney fees in such a situation, Oklahoma had not done so up to that point. We agreed with plaintiff that in the effectuation of the settlement a distinct service had been rendered the carrier that it could not otherwise have obtained without paying for the service of an attorney, and that it was through

plaintiff's efforts that a fund more than large enough to assure the carrier's full recoupment existed. In light of that and the facts and circumstances surrounding the case, we remanded the matter to the trial court for its determination of whether there existed an implied contract between carrier and plaintiff's attorney to pay for services rendered to it.

The syllabus by the Court provides:

"Where an attorney renders beneficial services to another, who knowingly accepts the benefits thereof, a promise to pay the services' reasonable worth may be implied, unless the circumstances show that the services were intended to be gratuitous; and this rule may apply even though the other is also being served by its own attorney."

Plaintiff's reliance on our previous decision in *Russell v. Bill Hodges Truck Co.*, 663 P.2d 724 (Okl.1983), is not persuasive. Although there we sustained the trial court's apportionment of a compensation carrier's claim, finding it to be just and reasonable under § 44,[3] we nonetheless reaffirmed our belief that the intention of § 44 is to prohibit an employee's "double recovery" and protect insurer's subrogation right. The primary focus of that action was the issue of whether "compensation" was limited to a money allowance or included all compensation for which the insurer is liable including medical and hospital payment. Additionally, that case did not involve judicial inquiry into the meaning of "compromise" or "compromise settlement" as used in § 44. To the extent, however, that *Russell* could be read as conflicting with the holding in this matter, it is expressly disapproved and overruled.

Because this recovery was effected without compromise settlement, National Union is entitled, under § 44 as amended, to reimbursement as follows:

| | |
|---|---|
| TOTAL RECOVERY | $2,000,000.00 |
| EXPENSES & ATTY FEES | − 827,148.52 |
| BALANCE OF RECOVERY | $1,172,851.48 |
| RATIO OF COMPENSATION | 152,986.95 |
| PAID TO TOTAL RECOVERED | 2,000,000.00 = 0.076 |
| RATIO MULTIPLIED BY BALANCE OF RECOVERY | .076 × 1,172,852.48 = |
| INSURER'S SHARE OF BALANCE | $ 89,136.71 |

---

The opinion of the Court of Appeals is VACATED. The Judgment of the trial court entered in accord with its order sustaining Plaintiff's "Application for Compromise of Workers' Compensation Lien" is REVERSED. The cause is REMANDED WITH DIRECTIONS TO ENTER JUDGMENT IN A MANNER NOT INCONSISTENT WITH THIS OPINION.

LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

OPALA, C.J., and KAUGER, J., concur in part, dissent in part.

HODGES, V.C.J., and ALMA WILSON, J., dissent.

**3.** Compare *Lyles v. American Hoist & Derrick Co.*, 614 F.2d 691 (10th Cir.1980) where the court affirmed apportionment of a carrier's claim as just and reasonable based on the insurer's stipulation that the district court should apportion the recovery in such a manner.