2002 OK CIV APP 48

**Myrna Jean KEENEY, Petitioner,**

v.

**TTC ILLINOIS, INC., Credit General Insurance, and The Workers' Compensation Court, Respondents.**

No. 96,391.

Court of Civil Appeals of Oklahoma, Division No. 3.

Jan. 25, 2002.

Certiorari Denied April 2, 2002.

Jef Stites, Stites & Green, Tulsa, OK, for Petitioner.

Andrew D. Downing, Michael M. McGivern, Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C., Tulsa, OK, for Respondents.

CAROL M. HANSEN, Presiding Judge.

¶1 Petitioner, Myrna Keeney (Claimant), seeks review of a Workers' Compensation Court (WCC) order which, among other things, found Claimant to be permanently and totally disabled but deferred payment of benefits until Claimant had "exhausted her share" of proceeds from a settlement with the third party who caused her injury.

¶2 On November 11, 1994, Claimant, while employed as a truck driver by Respondent,

TTC Illinois, Inc. (TTC), was injured when she slipped and fell while on the premises of Giant Industries. TTC provided her with medical treatment and temporary total disability (TTD) compensation from November 12, 1994 through March 23, 1998 and from September 9, 1998 through June 13, 2000.

¶ 3 Claimant filed her claim with the WCC in June 1998. She had previously filed a personal injury action against Giant Industries in district court. In July 1998, she settled the district court action against Giant Industries for $255,000.00.[1] Respondents, TTC and its compensation carrier Credit General Insurance (collectively Employer), were also parties to the settlement to protect their subrogation rights for workers' compensation benefits provided Claimant. The settlement was approved by the WCC in September 1998.

¶ 4 By the settlement agreement, Employer took $90,000.00 in satisfaction of its $142,785.00 subrogation lien for benefits provided Claimant to that point. Claimant received $100,000.00 of the settlement funds and the remaining $65,000.00 went to attorney fees and expenses. The WCC order approving the settlement provided Employer was not released from any obligation to provide benefits pursuant to the Workers' Compensation Act (Act), nor was Employer limited in petitioning the WCC for "a credit against future benefits" provided pursuant to the Act.

¶ 5 In November 1998, Employer filed its *Motion to Suspend Benefit Payments* in the WCC. In its motion, Employer recited the history of the case essentially as set forth above, and alleged—"Due to the Claimant's third-party settlement, [Employer is] not responsible for any additional benefits pursuant to the [Act] until there exists a deficiency over and above the third-party settlement." Stated otherwise, Employer argued [a] it was entitled to a "credit" against benefit payments for the $165,000.00 it alleged Claimant had received in the settlement, and [b] that benefits under the Act should be "suspended until a deficiency exists." Employer cited 85

O.S.1991 § 44 (a) in support of this argument.

¶ 6 Section 44(a), in relevant part, provides that if one, entitled to compensation under the Act, is injured by the negligence or wrong of another not in the same employ, and:

... elects to proceed against such other person or insurance carrier, as the case may be, the employer's insurance carrier shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated by the Workers' Compensation Act for such case.

¶ 7 Claimant did not respond to Employer's motion until July 1999. In the interim, the WCC had entered an order awarding Claimant TTD and medical treatment. In that March 1999 order the WCC also found that "respondent's objection to the commencement of temporary total disability is OVERRULED." (Emphasis in original). Employer appealed to a three judge panel of the WCC, asserting the trial court lacked jurisdiction to enter the order because it had not addressed the issue of credit for the third party settlement. In May 1999, the three judge panel affirmed the trial court's order without modification and no further appeal was taken.

¶ 8 Claimant then filed her *Objection to Respondent's Motion to Suspend Benefit Payments*. Claimant argued benefits should not be suspended because Employer's lien for past benefits paid had been satisfied by its acceptance of $90,000.00 from the third party settlement. Claimant further asserted suspending benefits would unjustly enrich Employer contrary to § 44(a).

¶ 9 In subsequent prehearing pleadings, Employer continued to assert a right of "offset against any monies due in the future" as an affirmative defense. The issues of permanent disability and medical maintenance were tried in November 2000. At that hearing Claimant also requested the court make "a determination as to the estimated value of

---

1. The order on review erroneously states the settlement was for $265,000.00, but the error was not raised by either party and does not materially affect the outcome.

the claim." The purpose of such a determination, as asserted by Claimant, would be to calculate a ratio by which Employer could "recoup" from each payment a proportionate share of the money Claimant had received, rather than totally suspending payments. Employer's stated position at the hearing was that "there should be an offset of at least $100,000.00 in this matter, and that that offset has to be exhausted before any more payments should be paid."

¶ 10 The trial court found Claimant was permanently and totally disabled and awarded $156.78 compensation per week and continuing medical maintenance. The court found, however, that pursuant to § 44(a) Employer was not "responsible" for either benefit "until the claimant has exhausted her share of the settlement proceeds."

¶ 11 More specifically, the court found that at the rate of $156.78 per week, and excluding medical costs, "637.8 weeks from JUNE 14, 2000 must lapse before respondent is required to make a permanent total disability payment." Also, the order provided that approved medical costs paid by Claimant would "shorten the time" until Employer became liable for payments. Claimant was required to make a biannual accounting to the court to document qualified medical expenses.

¶ 12 Employer appealed this order to a three judge panel. Claimant did not request review by the panel. The three judge panel modified the trial court's order only to correct the name of the insurance carrier, and otherwise affirmed the order. Claimant seeks review of the WCC order as modified. We will not disturb a three judge panel substituted decision if it is supported by competent evidence and is not otherwise contrary to law. *Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548.

¶ 13 Claimant first contends that under the doctrine of issue preclusion, or *res judicata*, the WCC order of March 1, 1999, as affirmed by the three judge panel, precluded that court from suspending benefit payments in its February 16, 2001 order. As noted above, in the earlier order the WCC found "[t]hat respondent's objection to the commencement of temporary total disability is OVERRULED." (Emphasis in original). Claimant argues the objection overruled could only be Employer's *Motion to Suspend Benefit Payments* based on § 44(a) and that Employer was precluded from raising that issue again after the March 1999 order became final.

¶ 14 Claimant did not, however, raise issue preclusion before the WCC. Issue preclusion is an affirmative defense which must be pleaded and proved. *Nealis v. Baird*, 1999 OK 98, 996 P.2d 438. The party against whom issue preclusion is interposed must have had a full and fair opportunity to litigate the critical issue prior to the earlier determination. *Id.*, at 458. The *Nealis* Court reasoned:

Precisely which issues were actually litigated and necessarily determined in a prior action and whether the party against whom issue preclusion is interposed had in the earlier case a "full and fair opportunity" to litigate the critical issue are questions to be initially determined by the trial court. They are precisely the kinds of first-instance decisions of disputed law or fact issues which an appellate court is not authorized to make.

¶ 15 Not only did Claimant fail to raise preclusion of Employer's § 44(a) offset assertion before the WCC, she, at a minimum, acquiesced in further consideration of that question after the March 1, 1999 order became final. She [a] filed her objection to Employer's motion to suspend benefit payments after that time, [b] argued at length regarding Employer's motion to suspend benefits at a July 26, 1999 hearing held specifically for that purpose without raising issue preclusion, and [c] recognized Employer's right to some amount of offset or credit by asking the WCC to find Claimant was entitled to receive a proportionate share of benefits rather than suspending them entirely.

¶ 16 Claimant may not secure vacation of an order based upon error, if there was error, which she invited or in which she acquiesced or tacitly conceded. *Samedan Oil Co. v. Corporation Commission of State of Oklahoma*, 1988 OK 56, 755 P.2d 664. For

the foregoing reasons we decline to substantively consider Claimant's contention regarding issue preclusion.

¶ 17 Claimant also contends the WCC did not have jurisdiction to determine if a "deficiency" within the meaning of § 44(a) existed because there was a "compromise settlement" here. Claimant first cites *Prettyman v. Halliburton*, 1992 OK 63, 841 P.2d 573 in support of this contention. We find Claimant's reliance on *Prettyman* is not well founded and that her contention is without merit.

¶ 18 In *Prettyman*, the workers' compensation carrier sought to recover, from a third party settlement fund, the cost of benefits it had paid to an injured worker. The personal injury suit was settled for $2,000,000.00. The carrier paid the injured worker $152,986.95 in benefits. The carrier was not a party to the personal injury suit, nor did it participate in the settlement. After the settlement proceeds were paid and placed in escrow, the injured worker petitioned the district court to order compromise of the carrier's subrogation claim and the carrier intervened. The trial court ordered the workers' compensation carrier to accept $29,205.48 in full settlement of its subrogation claim and the carrier appealed.

¶ 19 The *Prettyman* Court's consideration centered on a 1975 amendment to § 44(a), including the last paragraph of that subsection, which states:

In the event that recovery [by employee from a third party] is effected by compromise settlement, then in that event the expenses, attorney fees and the balance of the recovery may be divided between the employer or insurance company having paid compensation and the employee or his representatives as they may agree. Provided, that in the event they are unable to agree, then the same shall be apportioned by the district court having jurisdiction of the employee's action against such other person, in such manner as is just and reasonable.

¶ 20 Because there was no employer-employee agreement, the *Prettyman* plaintiff/claimant argued the recovery was properly apportioned by the district court as it determined was "just and reasonable" under the "compromise settlement" provision in § 44(a). In examining the foregoing amendatory language in § 44, which the injured employee asserted was controlling, the Supreme Court found the key to construing the section was the meaning of "compromise settlement". The Supreme Court defined that term, as used in § 44, as a settlement with the third party tortfeasor which is less than the amount of workers' compensation payments or the estimated total of those payments.

¶ 21 Having found the settlement there was not a "compromise settlement" because the recovery far exceeded workers' compensation benefits, the *Prettyman* Court held the district court erred in its "just and reasonable" apportionment and remanded the matter for apportionment pursuant to the mandatory formula set out in § 44(a) for non-compromise settlements.

¶ 22 *Prettyman* construes only those portions of § 44(a) dealing with apportionment of the settlement from the district court action. The employer's or workers' compensation carrier's obligation under § 44(a) to "contribute only the deficiency" between settlement recovery and workers' compensation benefits was not at issue there as it is here, and the relevant provisions of § 44(a) there are not the same as here. Claimant's settlement recovery was, in fact, determined by the parties' agreement.

¶ 23 Whether the settlement here was a "compromise settlement" as defined in *Prettyman* is of no consequence because Claimant and Employer *agreed* on how the settlement should be apportioned. Section 44(a) only mandates apportionment by the district court, or apportionment according to the statutory formula, where the employer and employee *cannot* agree on how the third party recovery should be divided. The issue here is completely different, that is, determination of Employer's obligation to pay, as *workers' compensation benefits*, the deficiency between settlement recovery and workers' compensation entitlement. That is clearly within the subject matter jurisdiction of the WCC.

¶ 24 Claimant also cites *Oklahoma Property Cas. Guarantee v. Tipton*, 1990 OK CIV APP 107, 807 P.2d 299, and *Tipton v. Oklahoma Property & Cas. Guar.*, 1993 OK CIV APP 134, 859 P.2d 527, in support of its contention that the WCC was without jurisdiction. While the *Tipton* cases are substantively more similar to the matter before us than *Prettyman*, we find them no more persuasive.

¶ 25 While the question has not been directly decided by our appellate courts, consideration of the language of § 44(a) as a whole, and its history, convincingly suggests that determination of the "deficiency" for which Employer will be liable is a matter for the WCC. As noted above, the part of § 44(a) upon which Claimant relies is part of the 1975 amendment, while that portion of § 44(a) requiring the employer's insurance carrier to contribute the deficiency between the amount collected and compensation provided is substantively unchanged since enactment of the Workers' Compensation Act in 1915.

¶ 26 We have not been directed to any authority prior to the 1975 amendment which implies that the responsibility for dealing with such deficiency lies with any court or tribunal other than the WCC. In fact, our inquiry reveals the contrary is true. See, e.g., *Coker–Mitchell Co. v. State Indus. Court*, 1969 OK 30, 450 P.2d 894 (Remanded to WCC to reduce award by amount of employee's recovery from third party settlement) and *Weiss v. Salvation Army*, 1976 OK 139, 556 P.2d 598 (Although decided on other grounds, the Supreme Court sustained a WCC order explicitly ordering "credit" for amount received from third party settlement).

¶ 27 We find no legislative intent to change the WCC's jurisdiction over determining § 44(a) deficiencies by the 1975 amendment. In *Prettyman*, at 581, the Supreme Court held the purpose of the 1975 amendment to § 44(a) was not to change "the whole focus of the statute." Applying statutory construction principles, the *Prettyman* Court held:

The only mischief the legislature sought to correct by the amendment at issue was the occurrence of an injured worker being forced to bear all costs and attorney fees involved in obtaining recovery from the third party tort-feasor, without a clear right to demand and receive a proportionate share from the insurer.

¶ 28 There is nothing in § 44(a) to demonstrate the Legislature intended the 1975 amendment to give the district court jurisdiction over any matter under that section other than division of settlements originating in the district court, nor is there anything to show an intent to divest the WCC of its longstanding jurisdiction over the question of deficiency or credit as affecting workers' compensation awards. The WCC here had jurisdiction to determine if a deficiency existed and how that deficiency should affect the award.

¶ 29 Claimant, assuming alternatively this Court may find the WCC has jurisdiction to determine the § 44(a) deficiency, asserts the WCC has failed to properly make that determination. We disagree. Claimant first argues the phrase, "the amount of the recovery against such other person actually collected", which is used to calculate the deficiency, should be the amount received from the settlement by Employer. We find no support for that argument.

¶ 30 In *Prettyman*, at 577, the Supreme Court noted that:

... § 44 is designed to protect the subrogation rights of the employer and his insurance carrier to the full extent of the compensations benefits paid the injured employee, and also to guard against the employee receiving double recovery.

¶ 31 In view of the stated purpose of § 44, the logical conclusion is that the Legislature intended for the deficiency to be calculated using the net amount received by Claimant. Using the amount received by Employer would serve neither the purpose of ensuring protection of Employer's subrogation rights to the fullest extent, nor would it guard against double recovery by Claimant. Although the WCC did not explicitly find that Claimant's $100,000.00 recovery from the settlement was used to determine the deficiency, that result is apparent by calculating the rate of compensation multiplied by the period

the compensation payments were deferred. We find no error in this determination.

¶ 32 Claimant further contends § 44(a) does not expressly provide for a "credit" against workers' compensation benefits where there is a deficiency. While that is true, the Supreme Court, in *Weiss v. Salvation Army,* at 599, sustained a WCC order finding the employer was entitled to a "credit" in accordance with § 44(a). In any event, we find this contention to be mainly a question of semantics. It is the ultimate effect of the "deficiency" provision in § 44(a) which is at issue, and that effect must insure Employer contributes only that amount for which it is obligated and that Claimant does not receive a double recovery.

¶ 33 This intended effect was recognized by the Court of Appeals in *Milliser v. Mercury Drilling Co.,* 1987 OK CIV APP 22, 738 P.2d 962. The facts in *Milliser* are similar to those here. The injured employee there received over $250,000.00 in workers' compensation payments, and settled his third party suit for $407,500.00. In the federal district court's apportionment of the settlement the injured employee received $168,075.16, and the employer received $26,440.54 for benefits already paid. The apportionment was not appealed.

¶ 34 The *Milliser* employer then moved in the WCC to terminate the benefits it was paying the injured employee. As Employer does here, the employer there did not contend it was forever absolved from further obligation, it instead argued it was not responsible for further payments until a deficiency existed. The WCC terminated benefits and the injured employee sought appellate review.

¶ 35 Upon examination of § 44(a) and cases interpreting it, the Court of Appeals concluded benefits should be "suspended or deferred awaiting the determination of whether there will be, in fact, a deficiency." The *Milliser* Court noted the injured employee was "not precluded from establishing a deficiency in the future", and that suspending benefits insured the injured employee received the total amount to which he was entitled under the Workers' Compensation Act, while guarding against a double recovery.

¶ 36 We agree with the reasoning of the *Milliser* Court. The WCC did not cite *Milliser,* but crafted a result which under the facts here was consistent with its holding. In the absence of detailed statutory guidance, the WCC's order effectuated the basic mandate of § 44(a) by comprehensively setting out the rights, obligations and actions required of the parties.

¶ 37 While Claimant argues the deficiency should be deducted proportionately from the end of the award, by the terms of the award itself she will be entitled to permanent total disability benefits for the rest of her life. There will be no end of the award and there is no mandate in § 44 for proportionate recovery. The Supreme Court, in *Prettyman* at 577, unambiguously stated § 44 "is designed to protect the subrogation rights of the employer", and to "guard against the employee receiving double recovery."

¶ 38 Because Employer's obligation to pay permanent total disability benefits arose at the time of the WCC order under review here, Claimant had then received $100,000.00 more in the settlement than Employer's obligation. By suspending Employer's obligation to provide benefits until those benefits equaled $100,000.00, the WCC protected against double recovery by Claimant, but ensured Claimant will receive the benefits to which she is entitled if a future deficiency is determined.

¶ 39 The WCC's order is supported by competent evidence and we find no error of law. The order is accordingly SUSTAINED.