2003 OK CIV APP 96

**NICHOLS RV WORLD and National American Insurance Company, Petitioners,**

v.

**Elizabeth A. CRANDELL and The Workers' Compensation Court, Respondents.**

No. 99,213.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 21, 2003.

J. Heath Lofton, Paul V. McGivern, Jr., McGivern, Gilliard & Curthoys, Tulsa, OK, for Petitioners.

James E. Green, Jr., Conner & Winters, P.C., Tulsa, OK, for Respondent.

Opinion by RONALD J. STUBBLEFIELD, Judge.

¶ 1 An employer and its insurance carrier seek review of an order of a Workers' Compensation Court three-judge panel, which modified the Trial Court's order in part and re-calculated the employer's credit against future workers' compensation payments based on the recovery received by a worker in settlement of a third-party claim. Based on review of the record on appeal and applicable law, we sustain the order.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

¶ 2 Elizabeth Crandell (Worker) was employed by Nichols RV World (Employer) as a sales person. On October 9, 1999, she was traveling on business for Employer in Columbus, Ohio, and was injured in a single-vehicle automobile accident while riding as a passenger in a taxicab. She had been directed by Employer to take a taxi from the airport to the fairgrounds to show horse trailers at the American Quarter Horse Congress. Worker suffered multiple bodily injuries and dental injuries and eventually underwent two lumbar surgeries and oral surgery. She filed her Form 3 on January 14, 2000.

¶ 3 Worker's claim for compensation was tried before the Oklahoma Workers' Compensation Court at which time Employer reserved "any rights of subrogation." The Trial Court found that Worker had sustained compensable injuries to her lumbar and cervical spine, left hand and abdomen, as well as disfigurement to her left eye, left hip and teeth. The Court awarded benefits for permanent partial disability and continuing medical maintenance and reserved for future hearing the issue of subrogation rights of Employer and its insurance carrier, National American Insurance Company (NAIC), concerning the third-party claim.

¶ 4 In the meantime, Worker and her husband had commenced a tort action in Ohio federal court against both the owner and the

driver of the taxicab. Discovery revealed that the total amount of liability insurance available was $100,000, and that there was no reasonable likelihood of collecting anything beyond that amount from any personal assets of the individual tortfeasors. The tortfeasors' insurance carrier, Independent Taxicab Association of Columbus, Inc., tendered the $100,000 policy limit in an offer of full settlement.

¶ 5 The compensation insurer, NAIC, had intervened in the federal action. The Ohio counsel for Worker and the counsel for NAIC agreed to accept the $100,000 tendered on behalf of the tortfeasors as a "fair and reasonable settlement" under the circumstances of the case. However, a dispute remained regarding division of the settlement proceeds.

¶ 6 In October 2002, the Ohio federal court entered an "Order Approving Settlement and Making Equitable Division of Settlement Proceeds." The Court found that NAIC had provided Worker $121,461.67 in compensation benefits pursuant to the judgment of the Oklahoma Workers' Compensation Court, and that Employer was obligated to pay for additional medical and dental treatment and additional permanent partial disability (PPD) payments at the rate of $213 per week. The Court also found that Worker's damages were "far in excess of the amount of the tendered settlement." The Court made the following equitable division of the competing claims to the $100,000 settlement fund:

a. $40,000.00 to Plaintiffs' attorneys, Conner & Winters, P.C. (40% contingent fee), out of which Conner & Winters, P.C. shall pay the fees of [Ohio] co-counsel, David W. Wenger.

b. $2,287.74 to Plaintiffs' attorneys for costs and expenses.

c. $23,750.00 to NAIC.

d. $6,000.00 to Plaintiff, Ronald Crandell, for his loss of consortium claim.

e. $27,962.26 to Plaintiff, Elizabeth Crandell.

The Court then ordered Worker and NAIC to dismiss all their claims against the tortfeasors and each other, with prejudice, within fourteen days.

¶ 7 Back in the Workers' Compensation Court, Employer had filed a Form 13 requesting a prehearing conference to address the third-party settlement. Employer sought to suspend PPD payments to Worker, claiming it was entitled to do so as a credit/offset under 85 O.S.2001 § 44, *for all settlement monies received by Worker and her attorneys.* Worker responded that it would be inappropriate for the Trial Court to order any credit against her future compensation payments because the third-party settlement left her "woefully under-compensated for the severity of the injuries she received" and because there was absolutely no risk of her receiving the double recovery which section 44 was designed to protect against.

¶ 8 After reviewing the trial briefs submitted by the parties and hearing argument of counsel, the Trial Court entered a "Miscellaneous Order" in which it determined that the settlement of the third-party claim was a "compromise settlement" under section 44, and that (1) the "net amount" collected by Worker under the settlement was $76,250—the $100,000 settlement amount less only the $23,750 received by NAIC; (2) Employer and NAIC are responsible only for the deficiency between the amount collected by Worker ($76,250) and the amount of compensation provided to her ($121,173.34); and (3) Employer and NAIC are entitled to suspend payment of benefits awarded under the Compensation Court order of April 2002 until the total amount of $121,461.67 in benefits has been exceeded. In effect, the Trial Court's order allowed Employer/Insurer a $76,250 credit against the PPD owed Worker.

¶ 9 Worker appealed to a three-judge panel, arguing there should be no credit against future benefits because she had not been made whole by the third-party settlement and did not receive a double recovery. In the alternative, Worker claimed that, if Employer and NAIC were entitled to any credit at all, it should be calculated based on the "net amount" she actually received—$27,962.26.

¶ 10 The three-judge panel vacated certain portions of the Trial Court's order and modified it by reducing the amount of Employer's credit against future workers' compensation

benefits to $27,962.26, the amount actually apportioned to Worker under the third-party settlement order. Employer and NAIC now seek review in this Court.

## STANDARD OF REVIEW

¶ 11 Employer claims that the panel erred in calculating the section 44 credit by improperly deducting the amounts apportioned by the federal court for Worker's attorney fees, costs and expenses, and the loss of consortium claim of Worker's husband. Employer requests this Court to vacate the panel's order and reinstate the Trial Court's finding that it is entitled to a credit against the payment of future workers' compensation benefits to Worker in the amount of $76,250.

¶ 12 This appeal does not involve fact-based determinations of the Workers' Compensation Court, but rather the legal conclusion reached regarding Employer's applicable credit, under section 44, against future PPD payments. On questions of law, the appellate courts exercise *de novo* review. *B.E. & K. Constr. v. Abbott*, 2002 OK 75, ¶ 1, n. 1, 59 P.3d 38, 39. Under the *de novo* standard of review, this Court has "plenary, independent and non-deferential authority to determine whether the lower court erred in its legal rulings." *American Airlines v. Hervey*, 2001 OK 74, ¶ 11, 33 P.3d 47, 50 (footnote omitted).

## DISCUSSION

### I. Determination of the Deficiency

¶ 13 Employer's sole contention of error is that the three-judge panel erred in limiting the amount of the third-party settlement to the amount apportioned to Worker by the federal court. Analysis of this issue must begin with an examination of 85 O.S.2001 § 44, which provides:

(a) If a worker entitled to compensation under the Workers' Compensation Act [(Act)] is injured or killed by the negligence or wrong of another not in the same employ, such injured worker shall, before any suit or claim under the [Act], elect whether to take compensation under the [Act], or to pursue his remedy against such other. Such election shall be evidenced in such manner as the Administrator may by rule or regulation prescribe.[1] If he elects to take compensation under the [Act], the cause of action against such other shall be assigned to the insurance carrier liable for the payment of such compensation, <u>and if he elects to proceed against such other person or insurance carrier, as the case may be, the employer's insurance carrier shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated by the [Act] for such case.</u> The compromise of any such cause of action by the worker at any amount less than the compensation provided for by the [Act] shall be made only with the written approval of the Court. *Whenever recovery against such other person is effected without compromise settlement by the employee or his representatives, the employer or insurance company having paid compensation under the [Act] shall be entitled to reimbursement as hereinafter set forth and shall pay from its share of said reimbursement a proportionate share of the expenses, including attorneys fees, incurred in effecting said recovery to be determined by the ratio that the amount of compensation paid by the employer bears to the amount of the recovery effected by the employee. After the expenses and attorneys fees have been paid, the balance of the recovery shall be apportioned between the employer or insurance company having paid the compensation and the employee or his representatives in the same ratio that the amount of compensation paid by the employer bears to the total amount recovered; provided, however, the balance of the recovery may be divided between the employer or insurance company having paid compensation and the employee or his representatives as they may agree.*
*In the event that recovery is effected by compromise settlement, then in that event*

---

1. Workers' Compensation Court Rule 47, 85 O.S. 2001, ch. 4, app., was the rule in effect which governed Worker's notification of election of remedies.

*the expenses, attorneys fees and the balance of the recovery may be divided between the employer or insurance company having paid compensation and the employee or his representatives as they may agree. Provided, that in the event they are unable to agree, then the same shall be apportioned by the district court having jurisdiction of the employee's action against such other person, in such manner as is just and reasonable.*

(Emphasis added.) (Language of a 1975 amendment to section 44 is set out in italics.)

¶ 14 Section 44, in regard to calculation of the "deficiency," speaks of the difference of the compensation provided and the "amount of the recovery against [the third party] *actually collected.*" Other language in the statute, which we find particularly telling, provides that the "balance of the recovery" for division between employer/insurer is the amount "[a]fter the expenses and attorney fees have been paid."

¶ 15 As it did below, Employer primarily relies on three cases to support its position in this appeal: *Milliser v. Mercury Drilling Co.,* 1987 OK CIV APP 22, 738 P.2d 962; *Keeney v. TTC Illinois, Inc.,* 2002 OK CIV APP 48, 46 P.3d 192; and *Caffey v. Soloray,* 2002 OK 82, 57 P.3d 870. Without question, those three cases all support the rule that an employer is responsible only for the deficiency between what an injured worker is entitled to under the Workers' Compensation Act and what he actually collected from a negligent third party. However, not one of the cases explicitly sets out what exactly constitutes the third-party recovery of the worker used to determine the "deficiency," although the three cases tend to follow the statutory language. In *Milliser,* the Court referred to what the worker/plaintiff *"actually collected* from [the] negligent third party." *Milliser,* 1987 OK CIV APP 22 at ¶ 7, 738 P.2d at 964 (emphasis added). In *Caffey,* the Court similarly referred to the "amount of the recovery ... *actually collected*" by the worker. *Caffey,* 2002 OK 82 at ¶ 6, 57 P.3d at 873 (emphasis added).

■ ¶ 16 We conclude that section 44 intends that the actual third-party recovery by a worker is the amount to be used in calculating a deficiency. Such a construction of section 44 best fulfills the intent of the law, which, since originally enacted in 1915, has been (1) to protect the rights of employers and their insurance carriers to be subrogated to the claims of injured workers against third-party tortfeasors to the extent of compensation benefits paid; and (2) to guard against workers receiving double recovery. *Prettyman v. Halliburton Co.,* 1992 OK 63, ¶ 6, 841 P.2d 573, 576. It is obvious that any part of a third-party recovery which goes to a worker/plaintiff's counsel, as fees or for advanced costs, does not go to the worker and, therefore, could not be considered part of a double recovery. It goes without saying that the same is true for a recovery by an entirely different party—such as the husband's recovery for loss of consortium.

■ ¶ 17 We find it to be the intent of section 44 that only the direct/actual recovery by the worker is considered in determinating the "deficiency." In this case, that amount was specifically delineated by the federal court, and was the amount specified in the three-judge panel's order. Thus, the three-judge panel order did not err in excluding attorney fees and the loss of consortium recovery when determining the section 44 deficiency.

## II. Employer's Attack Upon the Apportionment Order

■ ¶ 18 In its appellate brief, under its single contention of error, Employer makes several additional arguments. It states that what really lies "at the heart of this appeal is the issue of whether a district court has authority to award attorney fees and litigation costs in an action for personal injuries." Employer claims the federal district court *"sua sponte"* entered the order making equitable division of settlement proceeds and awarding Worker's attorney fees, although it "clearly lacked authority to award attorney fees and costs." Employer accuses the federal court of paying Worker's attorneys an "excessive, unreasonable fee" and refunding "alleged" costs and expenses in an "excessive amount." Employer maintains: "Any suggestion that Employer was in agreement

with this outrageous fee arrangement is ridiculous."

¶ 19 We find these appellate assertions without merit. First, Employer's insurance carrier, NAIC, was designated as "Intervenor" in the third-party action filed in Ohio federal court. The federal court "Order Approving Settlement and Making Equitable Division of Settlement Proceeds" provides:

> This case comes before the Court *on the joint motion of the parties to approve settlement with the Defendants and for an equitable apportionment of the proceeds of the settlement* between the Plaintiffs, Elizabeth A. Crandell and Ronald Crandell, their attorneys, and the Intervenor, National American Insurance Company ("NAIC").

(Emphasis added.) This is *prima facie* proof that the judicial apportionment order was not entered *"sua sponte,"* as Employer asserts, but at the request of Worker, her attorneys *and NAIC.*

¶ 20 Furthermore, because the order recites that the parties requested the federal court to both approve the settlement *and* apportion the proceeds, it further appears that Worker, her attorneys and NAIC were unable to agree on division of the third-party settlement amount. In such an instance, the second paragraph of section 44(a) mandates that the expenses, attorney fees and balance of recovery "shall be apportioned by the district court having jurisdiction of the employee's action against such other person, in such manner as is just and reasonable." In light of that provision, Employer and NAIC's argument that the federal court was limited by the "American Rule" regarding attorney fees, and "lacked authority" to determine a reasonable fee for Worker's counsel is disingenuous and without merit.

¶ 21 After noting that there were "competing claims" between Worker, her attorneys and NAIC for its subrogation claim, the federal court in its order fashioned an equitable division of the settlement proceeds. *The order was approved as to both form and content by the law firm which represented NAIC in the federal court proceeding.* The order was not appealed. Thus, the final judgment of the federal court conclusively established that the fee awarded to Worker's counsel was "just and reasonable" under section 44(a). *See Tipton v. Oklahoma Property & Cas. Guar. Ass'n,* 1993 OK CIV APP 134, ¶¶ 15–16, 859 P.2d 527, 532.

¶ 22 Employer also claims that Worker "voluntarily" limited her recovery to $100,000, at least insinuating that she should not gain from such an act. We again disagree because the federal court order demonstrates to the contrary. The order recites that: (1) The settlement amount constituted the tortfeasors' full liability insurance policy limit; (2) no other insurance was available; (3) Worker *and NAIC* wished to accept the $100,000 tendered on behalf of the tortfeasors and asked the Court to approve that settlement as fair and reasonable.

¶ 23 Review of the appellate assertions made by Oklahoma counsel for Employer and NAIC in light of the contents of the federal court apportionment order reveals that current counsel is telling this Court what suits the present interests of Employer and NAIC, as though what prior counsel did in a different court is without relevance. This Court does not condone such practices. Employer and NAIC are estopped from asserting a position contrary to that assumed by NAIC in federal court. *See Messler v. Simmons Gun Specialties, Inc.,* 1984 OK 35, ¶ 18, 687 P.2d 121, 128; *State ex rel. Comm'rs of Land Office v. Keller,* 1953 OK 371, ¶¶ 30–32, 264 P.2d 742, 748–49.

## III. The Limitations on This Court's Authority to Correct the Erroneous Compensation Court Order

¶ 24 In her appellate response brief, Worker maintains that, although the three-judge panel attempted to correct the error of the Trial Court by excluding the amounts apportioned by the federal court for attorney fees and her husband's loss of consortium claim, the panel nonetheless erred. She asserts that no section 44 credit should have been allowed because she was not fully compensated by her recovery in the federal lawsuit, and that it was error for the three-judge panel to allow Employer to suspend any benefit payments.

¶ 25 Employer responds that this Court should not consider Worker's argument because she voluntarily agreed to limit her recovery (instead of having a judge or jury determine the full extent of her damages), and is estopped from claiming she has not been made whole. In addition, Employer points out Worker's failure to file a counter-appeal seeking review of the Workers' Compensation Court decision, and claims she has waived any argument seeking her own affirmative appellate relief. We find no merit to Employer's estoppel argument, but, because we are constrained by rules of appellate practice, we must agree with Employer's latter contention, and we find that Worker has failed to preserve a right to correction of any lower court error.

¶ 26 The general rule is that an appellee who does not file a counter-appeal may "argue *only those errors* which, if rectified, would *support the correctness* of the trial court's judgment." *Bivins v. State ex rel. Oklahoma Mem'l Hosp.*, 1996 OK 5, ¶ 20, 917 P.2d 456, 465. "The successful party may, without cross-appealing or assigning errors, save the judgment by showing that errors were committed against him below which, if corrected, will make the result reached below correct." *Woolfolk v. Semrod,* 1960 OK 98, ¶ 0, 351 P.2d 742, 743 (syllabus 2 by the court).

¶ 27 Oklahoma Supreme Court Rule 1.100(c), 12 O.S.2001, ch. 15, app. 1, provides that a cross-action or counter-action to review a decision of the Workers' Compensation Court shall be commenced within the same time and in the same manner as the principal proceeding/petition for review. Even though this case is subject to *de novo* appellate review, limitations on our authority prevent this Court from directing the entry of an order more favorable to Worker than the panel-substituted order—a counter-appeal was necessary for her to challenge the panel's calculation of the credit amount.

### IV. Appeal–Related Attorney Fees

¶ 28 In the concluding paragraph of Worker's appellate response brief, she requests this Court to award her $1,500 attorney fees for defending the appeal. However, the fee request is not in compliance with Oklahoma Supreme Court Rule 1.14, 12 O.S.2001, ch. 15, app. 1, and we will not consider it at this time. Worker may re-urge her attorney fee request pursuant to Rule 1.14(b).

### CONCLUSION

¶ 29 Both Employer and Worker have challenged the three-judge panel's determination of a $27,962.26 credit under section 44(a) entitling Employer to suspend payment of benefits. Employer claims the appropriate credit amount is $76,250. We reject that contention, finding that the three-judge panel's modification of the order to omit attorney fees, costs, and husband's subrogation recovery was not error. Worker claims there should have been no credit under the circumstances of the case and thus no suspension of her benefit payments. However, her failure to file a counter-appeal precludes us from considering her entitlement to any relief. Consequently, we sustain the order of the Workers' Compensation Court.

¶ 30 SUSTAINED.

COLBERT, V.C.J., and TAYLOR, P.J., concur.